FILED
NOV 29 2007
NOV 29 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| G.M. SIGN, INC., an Illinois corporation, individually and as the representative of a class of similarly-situated persons, ) ) ) ) ) | |
| Plaintiffs, ) ) | Case No. 07 C 5953 |
| v. ) ) | |
| FINISH THOMPSON, INC., ) ) | |
| Defendant. ) | |

## DEFENDANT'S RESPONSE AND OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Defendant Finish Thompson, Inc. (hereinafter "FTI") by and through STEPHEN J. SCHLEGEL, LTD., its attorneys hereby responds to and opposes Plaintiff's Motion to Remand this Cause to the Circuit Court of Lake County, Illinois. In support of this response and opposition, the Defendant states:

### SUMMARY

The Plaintiff has filed its Motion to Remand this Cause to the Circuit Court of Lake County, Illinois, upon the ground that "Defendant's Notice of Removal states—without any support—that 'Defendant is informed that approximately 13,000 faxes may have been sent' Notice of Removal, paragraph 5." Plaintiff contends that Defendant's allegation upon information is insufficient to support the removal of this cause. Plaintiff contends that the Defendant's statement leaves open the possibility that the amount in controversy is far less than $5 million, which would mean there is no diversity jurisdiction in this cause. Plaintiff's contentions are in error and the Motion to Remand should be denied. The sole evidence to date

1

on the question of the amount in controversy is that a third-party contracted with defendant to send 13,000 faxes and Plaintiff received one of them. The fact that Plaintiff may not recover five million dollars in damages (since Defendant may or may not be held liable) is not relevant to the question of removal and/or remandment. The fundamental questions raised by this Motion have been decided in the substantially similar case of *Brill vs. Countrywide Home Loans, Inc.*, 427 F.3d 446; 2005 U.S. App. LEXIS 22514, an opinion by Circuit Judge Easterbrook, a copy of which is appended to this response for this court's convenience.

## ARGUMENT

FTI filed its Notice of Removal for the reasons stated therein upon its belief that 13,000 faxes were sent, one of which is the fax complained of by the Plaintiff in this Cause. As will be discovered in this Cause, and as Defendant believes the Plaintiff knows, Defendant paid a third-party company a sum of money and that party agreed to send 13,000 fax ads of the type apparently received by Plaintiff. Copies of documents from Defendant's file confirming this information, including an electronic check paid October 11, 2005 and a letter from the third-party to Defendant's representatives dated October 3, 2005 are appended to this Response as Exhibits A and B, to confirm the basis of the Defendant's belief that 13,000 faxes were sent and that this case was properly removed. The fact that Defendant cannot specify the exact number of faxes that were actually sent and received is, at this juncture, irrelevant to the amount in controversy question.

As in *Brill vs. Countrywide Home Loans, Inc.*, 427 F.3d 446 (2005), Plaintiff is seeking statutory damages of five hundred dollars per fax, a sum that may be trebled if the Defendant is found to have willfully or knowingly violated the Telephone Consumer Protection Act (TCPA), which gives rise to Plaintiff's alleged cause of action. 47 U.S.C. §227(b)(3).

The arithmetic is simple. 13,000 times $500 equals $6,500,000. Treble that and we have an amount in controversy not including attorneys' fees of $19,500,000. It is not required that Plaintiff needs to recover $6,500,000 or more or that it will recover more than the jurisdictional minimum, but it clearly satisfies the jurisdictional minimum.

It means the amount in controversy exceeds the requisite $5,000,000. The 7th Circuit in *Brill* confronted the question posed here with the following answer:

> The question is not what damages the plaintiff will recover, but what amount is 'in controversy' between the parties. That the plaintiff may fail in its proof, and the judgment be less than the threshold (indeed, a good chance that the plaintiff will fail and the judgment will [**7] be zero) does not prevent removal. Once the proponent of jurisdiction has set out the amount in controversy, only a 'legal certainty' that the judgment will be less forecloses federal jurisdiction. See St.[*449] *Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 82 L. Ed. 845, 58 S. Ct. 586 (1938); *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955 (7th Cir. 1998). This standard applies to removed cases no less than to those filed initially in federal court. See *Normand v. Orkin Exterminating Co.*, 193 F.3d 908 (7th Cir. 1999); cf. *The Barbers, Hairstyling for Men & Women, Inc. v. Bishop*, 132 F.3d 1203 (7th Cir. 1997)." *Brill v. Countrywide Home Loans Inc.*, 427 F.3d at 447.

In this case, discovery remains to determine whether or not the third-party actually sent 13,000 faxes as it contracted to do. It was paid to do that, however, and we cannot change that fact. Whether Defendant FTI is liable at all will remain a question, but even if it is not, the amount in controversy, for jurisdictional purposes has been met at this juncture and the matter may not be remanded to the state court under these circumstances.

Subsequent to the *Brill* decision, this Court was presented again with the same matter, specifically by this Plaintiff. In *G.M. Sign v. Franklin Bank, S.S.B.*, this Court held that *Brill* controlled and denied G.M. Sign's motion for remand. In that case, Chief Judge Kocoras stated:

> However, *Brill* is the only controlling authority on the issue, and clearly stands for the notion that federal courts have "arising under" jurisdiction over TCPA claims pursuant to *28 U.S.C. §1331*, and that such claims are thus removable under *28 U.S.C. §1441*. Therefore, we are bound by the *Brill* decision and, consequently,

3

find that because subject matter jurisdiction exists under *28 U.S.C. §1331*, remand would be improper. *G.M. Sign v. Franklin Bank, S.S.B.*, 2006 U.S. Dist. LEXIS 29667, *7 (N.D. Ill., April 19, 2006).

WHEREFORE, it is respectfully submitted that the Plaintiff's Motion to Remand should most respectfully be denied.

                                  Respectfully submitted,

                                  FINISH THOMPSON, INC.

Dated: November 29, 2007        BY: STEPHEN J. SCHLEGEL, LTD.

                              By  /s/ Stephen J. Schlegel
                                    Stephen J. Schlegel
                                    Its Attorneys

Stephen J. Schlegel ARDC# 2486903
Stephen J. Schlegel, Ltd.
Attorneys for Defendant
111 W. Washington Street, Suite 1020
Chicago, IL 60602
312-346-8385

4





A

# *MaxiLeads*

Macaw, Inc - Business to Business Solutions, Agent
2920 Avenue R, Brooklyn, New York 11229
Phone: (718) 645-2018 Ext 181; (800) 264-3898 Ext 181
Fax: (718) 228-5522; (800) 871-4211
www.btobsolutions.net/maxileads

Date: Monday, October 03, 2005
From: Ron Hillard
Attention: David Bowes and Karen Clement
Fax: (814) 455-8518          Client Number: J082902

Welcome aboard! We now have everything needed to start your faxing campaign, except payment. We would like to remind you that we no longer take credit cards. We accept payment by "Fax Check," which is the safest way to make payment long distance.

We do not deposit your payment until after we send your faxes. However, we do require a fax of your check before we begin your program. As agreed, you pay only $288 for us sending 13,000 fax ads. To begin your program immediately, follow these simple instructions.

## STARTING YOUR CAMPAIGN:

* Write a $288 check payable to "Business to Business Solutions"
* In place of your signature write the word "Void"
* Write the "Client Number" (J082902) in the "memo field"
* Make a copy of this check
* Fax the check copy to (800) 871-4211
* Your bank will send you a signed receipt with your statement
* We will not deposit your payment until after we fax your ad
* Unless you tell us to wait, your campaign begins upon our receipt of your faxed check copy



B

LEXSEE

JAMES BRILL, Plaintiff-Respondent, v. COUNTRYWIDE HOME LOANS, INC., Defendant-Petitioner.

No. 05-8024

UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

427 F.3d 446; 2005 U.S. App. LEXIS 22514; 36 Comm. Reg. (P & F) 1333

October 7, 2005, Submitted
October 20, 2005, Decided

**SUBSEQUENT HISTORY:** As Amended November 7, 2005.

**PRIOR HISTORY:** [**1] Petition for Leave to Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 05 C 2713. John W. Darrah, Judge.
Brill v. Countrywide Home Loans, Inc., 2005 U.S. Dist. LEXIS 19664 (N.D. Ill., Sept. 8, 2005)

**COUNSEL:** For COUNTRYWIDE HOME LOANS, INCORPORATED, Petitioner: Howard L. Teplinsky, OTTENHEIMER, TEPLINSKY, ROSENBLOOM, Buffalo Grove, IL USA.

For JAMES BRILL, Respondent: Daniel A. Edelman, EDELMAN, COMBS & LATTURNER, Chicago, IL USA.

**JUDGES:** Before POSNER, EASTERBROOK, and ROVNER, Circuit Judges.

**OPINION BY:** EASTERBROOK

**OPINION**

   [*447] EASTERBROOK, *Circuit Judge.* Countrywide Home Loans violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, by sending fax advertisements. James Brill, one of the recipients, filed suit in state court, seeking to represent a class of recipients. Countrywide filed a notice of removal under the Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (2005). Brill's suit was commenced after February 18, 2005, the Act's effective date. The class comprises more than 100 members, minimal diversity of citizenship is present, and Countrywide alleged in the notice of removal that the amount in controversy exceeds $ 5 million, the statutory threshold. Countrywide concedes that it sent [**2] at least 3,800 advertising faxes, and § 227(b)(3) provides that the court may award $ 500 per fax, a sum that may be trebled if "the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection". The award thus could reach $ 5.7 million. If Brill can show that Countrywide sent more than the 3,800 junk faxes, it could be higher still. Yet the district judge remanded the case, ruling not only that Countrywide had not carried its burden of showing that the stakes exceed $ 5 million (Brill might be unable to prove wilfulness) but also that suits under the Telephone Consumer Protection Act *never* may be removed, because state jurisdiction is exclusive. 2005 U.S. Dist. LEXIS 19664 (N.D. Ill. Sept. 8, 2005). Countrywide has filed a petition for interlocutory review under 28 U.S.C. § 1453(c)(1) (as amended by the Class Action Fairness Act). We grant this petition, accept the appeal, and summarily reverse.

   The district court began by allocating to Countrywide, as the proponent of federal jurisdiction, the burden of persuasion on the amount in controversy. That the proponent of jurisdiction [**3] bears the risk of non-persuasion is well established. See, e.g., *In re Brand Name Prescription Drugs Antitrust Litigation*, 123 F.3d 599, 607 (7th Cir. 1997); *Smith v. American General Life & Accident Insurance Co.*, 337 F.3d 888, 892 (7th Cir. 2003). Whichever side chooses federal court must establish jurisdiction; it is not enough to file a pleading and leave it to the court or the adverse party to negate jurisdiction. See *Lujan v. Defenders of Wildlife*, 504 U.S.

Case 1:07-cv-05953    Document 21    Filed 11/29/2007    Page 8 of 11

Page 2
427 F.3d 446, *447; 2005 U.S. App. LEXIS 22514, **3;
36 Comm. Reg. (P & F) 1333

*555, 561, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992)*. And the rule makes practical sense. If the burden rested with the proponent of remand, then Countrywide could have removed without making any effort to calculate its maximum exposure, and without conceding that it had faxed thousands of ads. That would have thrown on Brill the burden of showing that Countrywide could not possibly have sent more than 3,333 junk faxes (for if the award can reach $ 1,500 per fax then it is No. 3,334 that puts the stakes over $ 5 million). Brill would have no way to show this early in the litigation, and plaintiffs in other kinds of suits would encounter similar difficulty. When the defendant has vital knowledge [**4] that the plaintiff may lack, a burden that [*448] induces the removing party to come forward with the information -- so that the choice between state and federal court may be made accurately -- is much to be desired.

Countrywide maintains that the Class Action Fairness Act reassigns that burden to the proponent of remand. It does not rely on any of the Act's language, for none is even arguably relevant. Instead it points to this language in the report of the Senate Judiciary Committee: "If a purported class action is removed pursuant to these jurisdictional provisions, the named plaintiff(s) should bear the burden of demonstrating that the removal was improvident (i.e., that the applicable jurisdictional provisions are not satisfied)." S. Rep. 14, 109th Cong. 1st Sess. 42 (2005). This passage does not concern any text in the bill that eventually became law. When a law sensibly could be read in multiple ways, legislative history may help a court understand which of these received the political branches' imprimatur. But when the legislative history stands by itself, as a naked expression of "intent" unconnected to any enacted text, it has no more force than an opinion poll of legislators -- [**5] less, really, as it speaks for fewer. Thirteen Senators signed this report and five voted not to send the proposal to the floor. Another 82 Senators did not express themselves on the question; likewise 435 Members of the House and one President kept their silence.

We recognize that a dozen or so district judges have treated this passage as equivalent to a statute and reassigned the risk of non-persuasion accordingly. See, e.g., *Berry v. American Express Publishing Corp., 381 F. Supp. 2d 1118 (C.D. Cal. 2005); Natale v. Pfizer, Inc., 379 F. Supp. 2d 161 (D. Mass.)*, affirmed on other grounds, *424 F.3d 43, 2005 U.S. App. LEXIS 19912 (1st Cir. Sept. 16, 2005)*. But naked legislative history has no legal effect, as the Supreme Court held in *Pierce v. Underwood, 487 U.S. 552, 566-68, 101 L. Ed. 2d 490, 108 S. Ct. 2541 (1988)*. A Committee of Congress attempted to alter an established legal rule by a forceful declaration in a report; the Justices concluded, however, that because the declaration did not correspond to any new statutory language that would change the rule, it was ineffectual. Just so here. The rule that the proponent of federal jurisdiction bears [**6] the risk of non-persuasion has been around for a long time. To change such a rule, Congress must enact a statute with the President's signature (or by a two-thirds majority to override a veto). A declaration by 13 Senators will not serve. Cf. *Cherokee Nation of Oklahoma v. Leavitt, 543 U.S. 631, 161 L. Ed. 2d 66, 125 S. Ct. 1172, 1181-82 (2005); Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U.S. 546, 162 L. Ed. 2d 502, 125 S. Ct. 2611, 2625-27 (2005)*.

There remains the question what Countrywide must do to discharge its burden. The district judge thought that a removing litigant must produce "evidence . . . that a favorable judgment will award Plaintiff" more than the jurisdictional minimum. The judge restated this as a need for "competent proof to establish" that the statutory threshold has been exceeded. Yet suits are removed on the pleadings, long before "evidence" or "proof" have been adduced. The question is not what damages the plaintiff will recover, but what amount is "in controversy" between the parties. That the plaintiff may fail in its proof, and the judgment be less than the threshold (indeed, a good chance that the plaintiff will fail and the judgment will [**7] be zero) does not prevent removal. Once the proponent of jurisdiction has set out the amount in controversy, only a "legal certainty" that the judgment will be less forecloses federal jurisdiction. See *St.* [*449] *Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 82 L. Ed. 845, 58 S. Ct. 586 (1938); Gardynski-Leschuck v. Ford Motor Co., 142 F.3d 955 (7th Cir. 1998)*. This standard applies to removed cases no less than to those filed initially in federal court. See *Normand v. Orkin Exterminating Co., 193 F.3d 908 (7th Cir. 1999)*; cf. *The Barbers, Hairstyling for Men & Women, Inc. v. Bishop, 132 F.3d 1203 (7th Cir. 1997)*.

Application of the *St. Paul Mercury* "legal certainty" standard usually is straightforward when the plaintiff wants to be in federal court. Then the complaint will contain allegations that, if established at trial, would

427 F.3d 446, *449; 2005 U.S. App. LEXIS 22514, **7;
36 Comm. Reg. (P & F) 1333

justify a judgment exceeding the jurisdictional minimum. When the plaintiff prefers to be in state court, however, the complaint may be silent or ambiguous on one or more of the ingredients needed to calculate the amount in controversy. A defendant's notice of removal then serves the same function [**8] as the complaint would in a suit filed in federal court. The complication is that a removing defendant can't make the plaintiff's claim for him; as master of the case, the plaintiff may limit his claims (either substantive or financial) to keep the amount in controversy below the threshold. Thus part of the removing party's burden is to show not only what the stakes of the litigation *could be*, but also what they *are* given the plaintiff's actual demands. That's the point of statements in our decisions that the removing litigant must show a reasonable probability that the stakes exceed the minimum. See, e.g., *Smith v. American General Life & Accident Insurance Co.*, 337 F.3d 888, 892 (7th Cir. 2003); *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997). The demonstration concerns what the plaintiff is claiming (and thus the amount in controversy between the parties), not whether plaintiff is likely to win or be awarded everything he seeks.

Countrywide did all that is necessary by admitting that one of its employees sent at least 3,800 fax ads. From this and the statutory text one can determine that the controversy [**9] exceeds $ 5 million. The complaint did not set a cap on recovery -- as it might have done if the plaintiff had represented that the class would neither seek nor accept more than $ 5 million in aggregate. Nor did the complaint abjure trebled damages; it held open that possibility, depending on the state of the proof. (The complaint reads: "If the evidence shows that the violation was willful, plaintiff requests trebling of the damages.") Countrywide did not have to confess liability in order to show that the controversy exceeds the threshold. A judge may well award less than $ 1,500 per fax, but a recovery exceeding $ 5 million for the class as a whole is not "legally impossible."

That the controversy exceeds $ 5 million is insufficient, however, if state courts have exclusive jurisdiction to resolve suits under the Telephone Consumer Protection Act. The district judge relied on § 227(b)(3), which provides:

> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State --
>
> (A) an action based on a violation of this subsection [*450] or the regulations prescribed under this subsection to enjoin such violation, [**10]
>
> (B) an action to recover for actual monetary loss from such a violation, or to receive $ 500 in damages for each such violation, whichever is greater, or
>
> (C) both such actions.
>
> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

This is the only portion of § 227 that expressly creates a private right of action, and from its failure to authorize litigation in federal court the district judge inferred that state jurisdiction must be exclusive. Six courts of appeals have come to similar conclusions -- though they deal only with the question whether suit to enforce the Telephone Consumer Protection Act may be filed or removed under the federal-question jurisdiction, see 28 U.S.C. § 1331, and not whether such a suit may be removed under the diversity jurisdiction. See *Foxhall Realty Law Offices, Inc. v. Telecommunications Premium Services, Ltd.*, 156 F.3d 432 (2d Cir. 1998); [**11] *ErieNet, Inc. v. Velocity Net, Inc.*, 156 F.3d 513 (3d Cir. 1998); *International Science & Technology Institute, Inc. v. Inacom Communications, Inc.*, 106 F.3d 1146 (4th Cir. 1997); *Chair King, Inc. v. Houston Cellular Corp.*, 131 F.3d 507 (5th Cir. 1997); *Murphey v. Lanier*, 204 F.3d 911 (9th Cir. 2000); *Nicholson v. Hooters of Augusta, Inc.*, 136 F.3d 1287 (11th Cir. 1998). But if state jurisdiction really is "exclusive," then it knocks out § 1332 as well as §

Case 1:07-cv-05953 Document 21 Filed 11/29/2007 Page 10 of 11

Page 4
427 F.3d 446, *450; 2005 U.S. App. LEXIS 22514, **11;
36 Comm. Reg. (P & F) 1333

1331.

These decisions can not be reconciled with either *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 162 L. Ed. 2d 257, 125 S. Ct. 2363 (2005), or *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 155 L. Ed. 2d 923, 123 S. Ct. 1882 (2003), both of which came after all of the six decisions to which we have referred. *Grable* resolved a conflict in the Supreme Court's own decisions by holding that federal jurisdiction does not depend on the existence of a private right of action under federal law. And *Breuer* held that statutory permission to litigate a federal claim in state court does not [**12] foreclose removal under the federal-question jurisdiction.

The Fair Labor Standards Act provides that a plaintiff may "maintain" an action in either state or federal court, and Breuer insisted that a right to "maintain" an action in state court forecloses its removal. The Justices concluded, however, that a plaintiff's right to litigate in state court does not block a defendant from electing a federal forum, because *28 U.S.C. § 1441(a)*, the general removal provision, allows the defendant to remove any claim under federal law (or supported by diversity of citizenship) "except as otherwise expressly provided by Act of Congress". The word "maintain" in the FLSA is not an "express" prohibition on removal, *Breuer* held.

One may say exactly the same about the right to sue in state court under *§ 227(b)(3)*. It does not mention removal or the general federal-question jurisdiction. It does not declare state jurisdiction to be exclusive. Thus it does not expressly override a defendant's removal rights under both *§ 1441* (because a claim that a business violated the Telephone Consumer Protection Act arises under federal law) and the Class Action Fairness Act. *Section 1445* [**13] has a list of non-removable actions that satisfy the "express prohibition" required by *§ 1441(a)*, and the Telephone Consumer Protection Act is not on that list. *Breuer* collects other express bars but does not include the Telephone Consumer Protection Act among them. 538 U.S. at 696-97. The Class Action Fairness Act has its own list of claims to which its removal provisions are inapplicable, see *28 U.S.C. § 1453(d)* (added by § 5(a) of the new Act), and the [*451] Telephone Consumer Protection Act is not on that list either.

Other circuits, writing before *Breuer*, wondered what function *§ 227(b)(3)* serves if it does not make state jurisdiction exclusive. Had Congress never penned those words, plaintiffs could have used state forums to the extent they were generally open to civil litigation. See *Testa v. Katt*, 330 U.S. 386, 91 L. Ed. 967, 67 S. Ct. 810 (1947). That's true enough, but restating an established norm can be beneficial, if only because it avoids any argument that for this law *federal* jurisdiction is exclusive. Such contentions are frequent and may entail decades of litigation across the thirteen circuits. See, e.g., *Yellow Freight System, Inc. v. Donnelly*, 494 U.S. 820, 108 L. Ed. 2d 834, 110 S. Ct. 1566 (1990) [**14] (holding, after 26 years of litigation, that claims under the Civil Rights Act of 1964 may be resolved in state as well as federal courts); *Tafflin v. Levitt*, 493 U.S. 455, 107 L. Ed. 2d 887, 110 S. Ct. 792 (1990) (holding, after 20 years of litigation, that claims under RICO may be resolved in state as well as federal courts). *Section 227(b)(3)* may serve the further function of freeing states from *Testa's* rule that they may not discriminate against federal claims; the clause in *§ 227(b)(3)* that the action is proper "if otherwise permitted by the laws or rules of court of a State" implies that each state may decide for itself whether to entertain claims under the Telephone Consumer Protection Act.

*Section 227(b)(3)* does not say that state jurisdiction is "exclusive" -- but another part of *§ 227* does use that word. *Section 227(f)(1)* permits the states themselves to bring actions based on a pattern or practice of violations. *Section 227(f)(2)* continues: "The district courts of the United States, the United States courts of any territory, and the District Court of the United States for the District of Columbia shall have exclusive jurisdiction over all civil actions brought under [**15] this subsection." How strange it would be to make federal courts the exclusive forum for suits by the states, while making state courts the exclusive forum for suits by private plaintiffs. But then *§ 227(f)(2)* is explicit about exclusivity, while *§ 227(b)(3)* is not; the natural inference is that the state forum mentioned in *§ 227(b)(3)* is optional rather than mandatory. Likewise the proviso that actions may be filed in state court "if otherwise permitted by the laws or rules of court of a State" implies that federal jurisdiction under *§ 1331* or *§ 1332* is available; otherwise where would victims go if a state elected not to entertain these suits? Our point is not that the reference to exclusive jurisdiction in *§ 227(f)(2)* shows that "Congress knows how" to limit litigation to one set of courts -- references to the subjective knowledge of a body with two chambers

Case 1:07-cv-05953 Document 21 Filed 11/29/2007 Page 11 of 11

Page 5

427 F.3d 446, *451; 2005 U.S. App. LEXIS 22514, **15;
36 Comm. Reg. (P & F) 1333

and 535 members, and thus without a mind, rarely facilitate interpretation -- but that differences in language within a single enactment imply differences in meaning as an objective matter. See Akhil Reed Amar, *Intratextualism*, 112 Harv. L. Rev. 747 (1999). The contrast between § *227(f)(2)* and § *227(b)(3)* [**16] is baffling unless one provides exclusivity and the other doesn't.

This means that removal is authorized not only by the Class Action Fairness Act but also by § *1441*, because the claim arises under federal law. Because § *1453(c)(1)* permits appellate review of remand orders "notwithstanding *section 1447(d)*", we are free to consider any potential error in the district court's decision, not just a mistake in application of the Class Action Fairness Act. When a statute authorizes interlocutory appellate review, it is the district court's entire decision that comes before the court for review. *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 205, [*452] *133 L. Ed. 2d 578, 116 S. Ct. 619 (1996)*. Thus § *1447(d)*, which would preclude appellate review of a remand based wholly on a conclusion that state jurisdiction is exclusive, does not apply when we are authorized to hear an appeal on some other ground -- and this appeal is proper because the district judge rejected Countrywide's argument that the Class Action Fairness Act allows removal.

The judgment of the district court is [**17] reversed, and the case is remanded with instructions to decide the suit on the merits.