**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| G.M. SIGN, INC., an Illinois corporation, individually and as the representative of a class of similarly situated persons, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 07 C 5953 |
| v. | ) ) | |
| FINISH THOMPSON, INC. | ) ) | Judge Kendall |
| Defendant. | ) | |

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

NOW COMES Plaintiff, pursuant to Fed.R.Civ. P. 23(a), (b)(3) and (g), and hereby submits its Motion for Class Certification.

**INTRODUCTION**

The Telephone Consumer Protection Act ("TCPA") forbids the use of "any telephone facsimile machine, computer, or other device **to send** an unsolicited advertisement to a telephone facsimile machine."  47 U.S.C. § 227(b)(1)(C). (Emphasis Added).  Junk faxing has been called "advertising by theft."  Defendant created a form advertisement and hired Maxileads (a/k/a Business To Business Solutions or "BBS"), a fax broadcaster), to fax the ad to businesses without first getting their permission.  Maxileads faxed 13,000 of Defendant's advertisements.

During October 2005, Plaintiff received one of Defendant's junk faxes during a broadcast. Plaintiff's Class Action Complaint ("Complaint") alleges that Defendant violated the TCPA by faxing "unsolicited advertisements" to Plaintiff and others.  The record in this case shows that 13,000 junk faxes were unsolicited.  Plaintiff requests that the Court certify a class, so the claims about Defendant's advertising faxes can be resolved on a class-wide basis.

1

**PROCEDURAL BACKGROUND**

Following a status hearing on May 14, 2008, the Court entered an order requiring that: (1) all class discovery shall be completed by August 14, 2008; and (2) Plaintiff's motion for class certification and supporting memorandum shall be filed by August 28, 2008 (response and reply due thereafter). (Doc. 27). Less than a week later, on May 20, 2008, Defendant mailed Plaintiff an Offer of Judgment pursuant to Rule 68. Exhibit A attached hereto. Defendant offers only individual relief to Plaintiff.

Defendant's Rule 68 Offer does not offer the full amount of relief prayed for in Plaintiff's complaint. Defendant has always known that this case is alleged on behalf of a putative class. The Complaint requests that the Court: (1) certify the classes, (2) appoint plaintiff as the class representative, and (3) appoint plaintiff's attorneys as class counsel. *See* Plaintiff's "Class Action Complaint" and "Motion For Class Certification" filed in the Circuit Court of the 19th Judicial Circuit, Lake County, Illinois on August 16, 2007 (before removal to this Court), attached hereto as Exhibit B and Exhibit C. "Defendant [has] admit[ted] that Plaintiff seeks to bring this case as a Class Action…." *See* Answer of Defendant Finish Thompson Inc. To Class Action Complaint (Doc. 24) (December 12, 2007). And Defendant removed this case under CAFA by alleging that more than $5 million is in controversy. So an offer of $2,500 does not offer complete relief.

Nevertheless, Plaintiff files this motion for class certification now because a number of trial courts within the Seventh Circuit have ruled that such a motion should be filed with the Court within ten days of the plaintiff's receipt of a Rule 68 offer of judgment. *E.g.*, *Wilson v. Collecto, Inc.*, No. 03 C 4673, 2003 WL 22299022, *2 (N.D.Ill. Oct. 6, 2003) (St. Eve, J.) ("[T]he filing of a motion to certify a class during the ten day period after a defendant makes an offer of judgment prevents mootness of Plaintiff's claim."); *Giblin v. Revenue Production Management,*

*Inc.*, No. 07 C 3432, 2008 WL 780627, *4 (N.D.Ill. Mar. 24, 2008) (Guzman, J.) ("Because plaintiffs moved for class certification within five days of receiving RPM's offer of judgment, the Court holds that their motion invalidates the offer and keeps this class action alive."); *W. Ry. Devices Corp. v. Lusida Rubber Prods., Inc.*, No. 06 C 0052, 2006 WL 1697119, at *3 (N.D.Ill. June 13, 2006) (Grady, J.) (same); *Parker v. Risk Mgmt. Alternatives, Inc.*, 204 F.R.D. 113, 115 (N.D. Ill. 2001) (Gettleman, J.) (same); *Asch v. Teller, Levit & Silvertrust, P.C.*, 200 F.R.D. 399 (N.D. Ill. 2000) (Gottschall, J.) (same); *Whitten v. ARS National Services, Inc.*, No. 00 C 6080, 2001 WL 1143238, *6-7 (Lefkow, J.) (same); *Kremnitzer c. Cabrera & Rephen, P.C.*, 202 F.R.D. 239, 244 (N.D. Ill. 2001) (Kocoras, J.) ("To conclude otherwise would invite the kinds of abuses and injustices that Justice Brennan described and that our brethren Courts have sought to avoid."). Thus, Plaintiff submits this Motion early.

Plaintiff respectfully requests leave of Court to file a supplementary supporting memorandum on August 14, 2008, the due date the Court set for such a filing

### FACTUAL BACKGROUND

Deposition testimony in this case shows that Defendant hired a fax broadcaster to send a single form advertisement to 13,000 recipients. Exhibit D (collection of deposition exhibits); Complaint Exhibit A. The fax advertised Defendant's "revolutionary system" that "recycles solvent on site for 10 ¢ A Gallon." *Id*. Defendant hired Maxileads (a/k/a "Business to Business Solutions") to fax the advertisements. *Id*. Defendant's employees have testified about the junk faxing. True and correct copies of the transcripts are attached: Depo. of Karen Clement (Feb. 20, 2008) (Exhibit E); Depo. of Casey Bowes (Feb. 20, 2008) (Exhibit F).

**Defendant's Management Authorized An Unsolicited Fax Advertising Campaign.**

    1.    **The Genesis of Defendant's Relationship With Maxileads.**

Since 2006, Karen Clement has been Defendant's marketing manager. Clement, p. 10,

lines 12-13.  Defendant first learned of Maxileads through Defendant's corporate president David Bowes.[1]  Clement, p. 16, lines 15-20; Bowes, p. 7, lines 1-7.  David Bowes was the owner of Defendant at the time and he personally approved of the fax advertising campaign.  *e.g.*, Clement, p. 19, lines 10-13; p. 28, lines 19-23; Bowes, p.7, lines 3-7.  Defendant contracted with Maxileads (BBS) to send a single junk fax to 13,000 fax numbers.  Clement, p. 57, lines 22-25.  Defendant paid $288 for that fax broadcast. Clement, p. 53, lines 17-19; Exhibit D.

### 2. Defendant Did Not Review The Fax Lists For Authorized Recipients Before Soliciting Their Business.

Maxileads provided the fax numbers for the broadcast.  Defendant did not provide any fax numbers to Maxileads.  Clement, p. 24, lines 22-25; p. 25 lines 1-22.  Defendant never reviewed the list of targeted fax numbers.  Clement, p. 25, lines 5-12.  When Defendant requested to see the fax listing, Maxilist employee Ron Hillard denied the request stating that "it was their personal lists and that they could not let [Defendant] see a copy of the list."  Clement, p. 25, lines 13-22; Bowes, p. 8, lines 11-13.

Maxileads created the form advertisement and sent them to Defendant for approval. Clement, p. 48, lines 17-23; Depo. Exhibit 11 (FTI0005) (Exhibit D).  The advertisements identified Defendant, but included a toll-free number that belonged to Maxileads, not Defendant. Clement, p. 49, lines 9-23.  The reason given by Maxileads for including the toll-free number was so Maxileads "could screen the calls and weed out any prank callers or faxes."  *Id*.

## ARGUMENT

The Court should certify the class of persons targeted with Defendant's junk fax.  Class actions promote judicial economy by aggregating many small claims into one lawsuit.  "Class

---

[1] David Bowes died in April 2007.  Clement, p. 12, lines 15-19.  Casey Bowes has since taken over as President and CEO of Defendant.  Bowes, p. 5, lines 22-23.

4

actions … permit the plaintiffs to pool claims which would be uneconomical to litigate individually. [M]ost of the plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum v. Shutts*, 472 U.S. 797, 808-809 (1985); *see also Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1977) (class actions aggregate "relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."

Plaintiff's claims are alleged under the TCPA. Two courts within this district have certified TCPA cases involving similar facts. *Hinman v. M and M Rental Center, Inc.*, No. 06 C 1156, 2008 WL 927910 at *4 (N.D. Ill April 7, 2008) (Bucklo, J.) (Exhibit G); *Sadowski v. Med1 Online, LLC*, No. 07 C 2973 (N.D. Ill. May 27, 2008) (Aspen, J.) (Exhibit H). Other trial courts have also certified TCPA class actions. *E.g., Travel 100 Group, Inc. v. Empire Cooler Service, Inc.*, 2004 WL 3105679 (Circuit Court of Cook County, IL, Oct. 19, 2004) (Exhibit I). In *Murray v. GMAC Mortg. Corp.,* 434 F.3d 948 (7th Cir. 2006), the Seventh Circuit reversed the denial of class certification in a case involving statutory claims arising under a different statute.

For class certification, the plaintiff must demonstrate that Rule 23(a)'s four prerequisites are satisfied: (1) that the proposed class is so numerous that joinder of all members is impracticable; (2) that there are questions of law or fact common to the class; (3) that the claims of the representative party are typical of the claims of the class; and (4) that the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). To proceed with a class under Rule 23(b)(3), the plaintiff must show that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

**A.      Proposed Class Definition.**

Plaintiff proposes the following class definition:

All persons who were sent a fax from "Finish Thompson" stating, "Attention Manufacturers" "Solvent 10¢ a Gallon" and listing (800) 264-3898 as the telephone number to call "for details."

This class definition is appropriate because the class members can be ascertained by reference to objective criteria. *See Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 397 (N.D. Ill. 1987). It is proper to define a class by referencing the defendant's conduct. *See Williams-Ellis v. Mario Tricoci Hair Salons and Day Spas*, No. 05 C 5030, 2008 WL 294731 at *3 (N.D. Ill. Jan. 31, 2008) (Kocoras, J.). *See also Sadowski,* No. 07 C 2973, p. 4.

Here, there is no need to include language indicating that the advertisement was unsolicited because Defendant never sought permission from any recipient before faxing advertisements. Defendant's fax advertised its goods and Defendant never attempted to obtain consent to send any of them. Everyone who was sent one of Defendant's advertisements is and should be a class member. The TCPA makes **sending** an unsolicited fax a violation. 47 U.S.C. § 227(b)(1)(C).[2] It makes perfect sense to require senders of junk faxes to obtain and possess proof of permission; and to bear the burden of proving that defense. Otherwise, recipients would have to prove a negative.

---

[2]     The TCPA's language makes it a violation for Defendant to "send" an advertisement without having first obtained express invitation or permission**.** 47 U.S.C. § 227(b)(1)(C). Furthermore, the FCC has explained that fax advertisers have the obligation to demonstrate compliance with the TCPA, including showing that they obtained prior express invitation or permission. *In re: Rules and Regulations Implementing The Telephone Consumer Protection Act of 1991*, 21 F.C.C.R. 3787, 3812 (April 6, 2006). The House Report on the TCPA discusses the phrase "prior express invitation or permission" and "makes clear that advertisers have a duty to 'establish specific procedures for obtaining prior permission <u>and maintaining appropriate documentation with respect to such permission</u>.'" *Jemiola v. XYZ Corp.*, 802 N.E.2d 745, 749 (Ohio Com. Pl. 2003) *citing* U.S. House Rep. 102-317, at 13.

**B.    Numerosity.**

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, the proposed class numbers 13,000. Therefore, "numerosity" is satisfied. *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002) ("Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient….").

**C.    Commonality.**

Rule 23(a) also requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is satisfied by showing "a common nucleus of operative fact." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). The requirement is usually met in cases where "the defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters." *Id.* A TCPA class satisfied the "commonality" requirement in another case within this district because the defendant "engage[d] in a standardized course of conduct vis-à-vis the class members, and plaintiffs' alleged injury arises out of that conduct." *Hinman*, 2008 WL 927910 at *3. Moreover, "the possibility that some of the individuals on [the fax transmission] list may separately have consented to the transmissions at issue is an insufficient basis for denying certification." *Id*.

Here, Defendant engaged in standardized conduct involving a common nucleus of operative facts by causing a single fax to be sent to a list of 13,000 persons on a list provided by the third-party broadcaster. The case involves common fact questions about Defendant's fax campaign and common legal questions under the TCPA, such as:

1. Whether Defendant violated the TCPA by faxing advertisements without first obtaining express invitation or permission to do so;

2. Whether Plaintiff and the other class members are entitled to statutory damages; and

3. Whether Defendant's acts were "willful" or "knowing" under the TCPA and, if so,

whether Plaintiff and the other class members are entitled to trebled damages.

**D.    Typicality.**

Rule 23(a)'s third requirement is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). *See also Sadowski,* No. 07 C 2973, p. 8 ("[T]ypicality 'should be determined with reference to defendant's actions, not with respect to particularized defenses it might have against certain class members.'" *quoting Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996) ... Plaintiff's claims and the other proposed class members' claims all arise from Defendant's October 2006 fax campaign."). Here, typicality is inherent in the class definition. Each class member was subjected to the same conduct. Each class member's claim is based on the same legal theory as Plaintiff's claim.

**E.    Adequacy of Representation.**

    **1.    Rule 23(a)(4) Adequacy Requirement.**

Rule 23(a)'s final requirement is that the class representative must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The burden of showing sufficient interest is relatively modest." *Redmon v. Uncle Julio's of Illinois, Inc.*, No. 07 2350, 2008 WL 656075 at *4 (N.D. Ill. March 7, 2008). "Adequacy" is met when the representative's interests are not antagonistic to or in conflict with those of the other class members. *Uhl v. Thoroughbred Tech. and Telecom., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002). Courts look for two things: (1) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (2) the plaintiff must not have interests antagonistic to those of the other class

members. "As long as the plaintiff has some basic knowledge of the lawsuit and is capable of making intelligent decisions based upon his lawyer's advice, there is no reason that he may not delegate further factual and legal investigation to his attorneys." *Nielsen v. Dickerson*, No. 98-5909, 1999 WL 350649, *7 (N.D. Ill. May 20, 1999) (Kocoras, J.).

Plaintiff understands its obligations and the nature of the claims, is involved in the litigation, and is interested in representing the class and enforcing the TCPA. Plaintiff and the other class members seek statutory damages under the TCPA. Given the identity of claims between Plaintiff and the class members, there is no potential for conflicting interests. There is no antagonism between the interests of Plaintiff and those of the other class members, which is the key factor to determine whether a plaintiff is an adequate representative. Therefore, Rule 23(a)(4)'s "adequacy" requirement is satisfied.

### 2. Rule 23(g) Class Counsel Adequacy Requirement.

Federal Rule 23(g) also requires that class counsel be adequate. Plaintiff has retained experienced counsel. *See* Exhibit J. The Court must consider: (i) the work counsel has done in identifying or investigating potential claims; (ii) counsel's experience in handling class actions; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). Plaintiff's counsel have a great deal of experience handling class actions, including those alleging violations of the TCPA, and they have diligently prosecuted this case. Judge Bucklo found Plaintiff's counsel adequate to represent the class in *Hinman v. M and M Rental Center, Inc.*, *supra*.

### F. **Predominance.**

Rule 23(b)(3) requires that common questions of law or fact predominate over individual questions. As discussed above, common legal issues predominate because the class members'

9

claims arise under the same federal statute. Common fact issues predominate because the class members' claims are focused on Defendant's fax advertising campaign, which included (1) preparing a single standardized form advertisement and (2) hiring a third-party to fax that ad to 13,000 persons. The *Hinman* court found predominance because the fax broadcasts at issue were sent *en masse* to recipients on a list of "leads" obtained from a third party. *Hinman*, 2008 WL 927910 at *4.

Defendant might argue that the Court must conduct individual investigations to determine who is an appropriate class member. That assertion would be incorrect because the record shows there are no individual issues about consent. Defendant could not have obtained "prior express invitation or permission," because Defendant did not even know in advance to whom its fax advertisements would be sent. Clement, p. 24, lines 22-25; p. 25 lines 1-22. Defendant might hypothesize that Maxileads might have had obtained prior permission, but nothing in the record supports this. Hypothetical individual issues do not support denying class certification. *See Ploog v. Homeside Lending, Inc.*, No. 00 C 6391, 2001 WL 1155288 (N.D. Ill. Sept. 28, 2001)(Guzman, J.); and *Carbajal v. Capital One, F.S.B.*, N219 F.R.D. 437, 443 (N.D. Ill. Jan. 20, 2004)(Kennelly, J)("[H]ypothetical possibility of multiple individual actions would effectively sound the death knell to use of the class action in consumer law context"). Indeed, Defendant bears the burden of proving prior express invitation or permission, but has never offered any evidence on that point. *E.g., Rules and Regulations*, 21 F.C.C.R. at 3812; *Sadowski,* No. 07 C 2973, p. 8 ("…Defendant ultimately has the burden of proof regarding this [prior permission or established business relationship] defense…."). Common issues will predominate.

**G.    Superiority.**

Finally, Fed. R. Civ. P. 23(b)(3) requires that a class action be the superior method for

adjudicating the claims. Certifying a class is the "superior" way when the "'class action would achieve economies of time, effort, and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem Prods. v. Windsor,* 521 U.S. 591, 615 (1997) (quoting Adv. Comm. Notes, 28 U.S.C. App., at 697); *Scholes v. Stone, McGuire & Benjamin,* 143 F.R.D. 181, 183 (N.D. Ill. 1992) (Alesia, J.) ("Equally important, judicial economy and efficiency, as well as consistent judgments, are achieved by certifying the class."). *Hinman* held that "resolution of the [TCPA] issues on a classwide basis, rather than in thousands of individual lawsuits would be an efficient use of both judicial and party resources." *Id.*, 2008 WL 927910 at *4.

"Rule 23(b)(3) was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006). The *Murray* court reversed the denial of class certification "because the district judge sought to curtail the aggregate damages for violations he deemed trivial." *Id.* The court held, "[I]t is not appropriate to use procedural devices to undermine laws of which a judge disapproves." *Id. Murray* arose from alleged violations of the Fair Credit Reporting Act, which like the TCPA, provides statutory damages. The court explained that the statute "must be enforced rather than subverted." *Id*.

Judge Kocoras recently addressed the issue in the context of a challenge to the constitutionality of the TCPA's $500 statutory damage and held as follows:

> In its reply, Rice Fields states that $500 would be a financially feasible amount if it were imposed, but the potential damages that could result from a class action involving many separate violations would result in crippling numbers. This argument is a nonstarter. Though the amount of damages could become very high if the statute is violated numerous times, as in the context of a class action, the purpose of the statute is to combat transmission of unsolicited fax advertisements. The statute accomplishes that purpose by making the practice prohibitively expensive, which is an acceptable means of accomplishing the statute's goal of

11

deterrence.  [*Phillips Randolph Enterprises, LLC v. Rice Fields*, No. 06 C 4968, 2007 WL 129052, * 3-4 (N.D. Ill. Jan. 11, 2007).]

From the perspective of the court system and the class members, a class action is superior to individual actions because the maximum recovery for each class member is only $500 and the TCPA does not allow for fee shifting.  *Sadowski,* No. 07 C 2973, p. 9 ("class treatment appears to be the superior method of handling Plaintiff's [TCPA] claims.").

Further, Defendant aimed its junk faxes at businesses and their employees—the fax said "Attention Manufacturers"—and businesses can appear in court only by hiring a lawyer. *Rowland v. California Men's Colony, Unit II Men's Advisory*, 506 U.S. 194, 195 (1993) ("the law permits corporations … and other artificial entities … to appear in federal courts only through licensed counsel").  Allowing this class to proceed as a class action will be an efficient use of judicial resources and it will be superior to individual lawsuits.

## CONCLUSION

The proposed class meets the requirements of Rules 23(a), (b)(3) and (g).  Consequently, Plaintiff requests that the Court certify the class, appoint Plaintiff as the class representative, and appoint Plaintiff's attorneys as class counsel.

June 2, 2008.                                         Respectfully submitted,


                                                      /s  Phillip A. Bock
                                                      One of Plaintiff's attorneys

| | |
|---|---|
| Brian J. Wanca | Phillip A. Bock |
| Ryan M. Kelly | Robert M. Hatch |
| ANDERSON + WANCA | BOCK & HATCH, LLC |
| 3701 Algonquin Road, Suite 760 | 134 N. La Salle St., Suite 1000 |
| Rolling Meadows, IL  60008 | Chicago, IL  60602 |
| Telephone:  847/368-1500 | Telephone:  312/658-5500 |

## **CERTIFICATE OF SERVICE**

      The undersigned attorney hereby certifies that, on June 2, 2008, he caused a copy of the foregoing Plaintiff's Motion For Class Certification to be served upon all counsel of record using the ECF system.

      /s  Phillip A. Bock