IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| G.M. SIGN, INC., an Illinois corporation, individually and as the representative of a class of similarly situated persons, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 07 C 5953 |
| v. | ) ) | |
| FINISH THOMPSON, INC. | ) ) | Judge Kendall |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
OF ITS AMENDED MOTION FOR CLASS CERTIFICATION**

NOW COMES Plaintiff, pursuant to Fed.R.Civ. P. 23(a), (b)(3) and (g), and hereby submits its Memorandum of Law in Support of its Motion for Class Certification.

**INTRODUCTION**

The Telephone Consumer Protection Act ("TCPA") forbids the use of "any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C. § 227(b)(1)(C). Junk faxing is called as "advertising by theft" because "You get a message you didn't want from people you don't know on paper they didn't buy." *Kaufman v. ACS Systems, Inc.*, 110 Cal. App. 4th 886, 891-893 (Cal. App. Ct. 2003).

Plaintiff's Class Action Complaint alleges that Defendant violated the TCPA by faxing "unsolicited advertisements" to Plaintiff and others. Discovery during the case revealed that Defendant created a form advertisement and hired a fax broadcaster named Business To Business Solutions ("BBS") to fax the ad to 13,000 businesses. Discovery also has revealed that Defendant made no attempt to get from any recipient the "prior express invitation or permission" required by the TCPA. Plaintiff requests that the Court certify a class, so the claims about

1

Defendant's advertising faxes can be resolved on a class-wide basis.

## FACTS

Deposition testimony in this case shows that Defendant sent a form advertisement about its "revolutionary system" that "recycles solvent on site for 10 ¢ A Gallon," and that Defendant hired BBS to fax the advertisements. Defendant's employees have testified. Caroline Abraham, the owner of the now-defunct BBS, also has testified about Defendant's junk faxes. True and correct copies of the transcripts are attached: Deposition of Karen Clement (February 20, 2008) (with Exhibits) [Exhibit A]; Deposition of Casey Bowes (February 20, 2008) (with Exhibits) [Exhibit B]; Deposition of Caroline Abraham (September 16, 2008) (with Exhibits) [Exhibit C].

1. **BBS Is Created And Works As An Agent For Maxileads (A Romanian Fax Blaster).**

Caroline Abraham owned BBS. Abraham, p. 9, lines 19-21. BBS was created in 2004 or 2005. Abraham, p. 7, line 4. BBS ceased business operations in 2007. Abraham, p. 8, line 23. BBS worked exclusively, as an agent, with a company named Maxileads (a/k/a Macaw) located in Romania. Abraham, p. 9, lines 3-11; p. 43, lines 18-24. BBS "provided services that [Maxileads] couldn't get themselves in the United States, in particular, phone lines and a method to receive payment." Abraham, p. 7, lines 12-16.

2. **BBS And Maxileads Advertised Their Services To Companies Like Defendant To Convince Them To Advertise By Blast Faxing.**

BBS and Maxileads teamed together to convince companies like Defendant to hire them to send advertising faxes. Abraham, p. 15, lines 2-5. BBS would help the companies "create and edit the advertisement." Abraham, p. 24, lines 5-9, 17-21. BBS owned the 20 to 30 telephone lines used to conduct the blast faxing. Abraham, p. 31, lines 15-25. During the course of its business with Maxileads, BBS sent a "few hundred" different blast faxes every year for 3 to 4 years straight. Abraham, p. 67, lines 20-25, p. 68, lines 2-21. BBS has been served with a

2

subpoena to produce telephone records but has not yet complied and produced documents. Abraham, p. 62, lines 12-25. BBS has agreed to work with Plaintiff and Defendant in this case to find and produce the records related to this case. Abraham, pp. 71-72, 79-81.

### 3. Defendant's Relationship With BBS And Maxileads.

Since 2006, Karen Clement has been the marketing manager for Defendant. Clement, p. 10, lines 12-13. Defendant first became aware of BBS and Maxileads through its President David Bowes.[1] Clement, p. 16, lines 15-20; Bowes, p. 7, lines 1-7. David Bowes was owned Defendant at the time and he personally approved the fax advertising campaign. *e.g.*, Clement, p. 19, lines 10-13; p. 28, lines 19-23; Bowes, p.7, lines 3-7; Abraham, p. 25, lines 2-4. Defendant contracted with Maxileads/BBS to send 13,000 faxes. Clement, p. 57, lines 22-25; Abraham, p. 21, lines 15-24. Defendant paid $288 for the fax broadcast. Clement, p. 53, lines 17-19; Abraham, p. 26, lines 24-25; p. 27, line 2; p. 33, lines 21-25; p.36, lines 2-9.

BBS created the form advertisement and sent them to Ms. Clement for approval. Clement, p. 48, lines 17-23; Depo. Exhibit 11 (FTI0005). The advertisements identified Defendant, but included a toll-free number belonging to Maxileads, not Defendant. Clement, p. 49, lines 9-23; Abraham, p. 19, lines 2-10. Maxileads gave the toll-free number so it "could screen the calls and weed out any prank callers or faxes." Clement, p. 49, lines 9-23; Abraham, p. 19, lines 14-23 (incoming calls "would often include complaints about the faxes").

### 4. Defendant Did Not Review The Fax Lists For Authorized Recipients Before Soliciting Their Business.

Defendant did not provide any fax numbers to BBS. Clement, p. 24, lines 22-25; p. 25 lines 1-22. Instead, Maxilist (Macaw) compiled and provided the list. Abraham, p. 28, lines 11-17; p. 41, lines 8-11. Defendant never reviewed the list of fax numbers that was used to conduct

3

the fax broadcast.  Clement, p. 25, lines 5-12.  When Defendant asked to see the fax list, Maxilist employee Ron Hillard refused the request, stating "it was their personal lists and that they could not let [Defendant] see a copy of the list."  Clement, p. 25, lines 13-22; Bowes, p. 8, lines 11-13.  Nobody requested or received permission from the recipients of Defendant's faxes.  Abraham, p. 28, lines 18-25.  Macaw purchased the lists from list providers, such as InfoUSA.  Abraham, p. 84, lines 20-25; p. 85, lines 2-5.  The lists were compiled using SIC codes.  Abraham, p. 85, lines 6-17.

## ARGUMENT

Class actions promote judicial economy by aggregating many small claims into one lawsuit.  "Class actions … permit the plaintiffs to pool claims which would be uneconomical to litigate individually.  [M]ost of the plaintiffs would have no realistic day in court if a class action were not available."  *Phillips Petroleum v. Shutts*, 472 U.S. 797, 808-809 (1985); *see also Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1977) (class actions aggregate "relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." .

Three federal courts within the Northern District of Illinois have recently certified TCPA cases involving facts similar to those at issue here.  *Hinman v. M and M Rental Center, Inc.*, 545 F.Supp.2d 802 (N.D. Ill. 2008) (Bucklo, J.) (Exhibit D); *Sadowski v. Med1 Online, LLC*, No. 07 C 2973, 2008 WL 2224892 (N.D. Ill. May 27, 2008) (Aspen, J.) (Exhibit E); and *G.M. Sign, Inc. v. Franklin Bank, S.S.B.*, No. 06 C 949, 2008 WL 3889950 (N.D. Ill. Aug. 20, 2008) (Kocoras, J.) (Exhibit F).  State trial courts have also certified TCPA class actions.  *E.g., Travel 100 Group, Inc. v. Empire Cooler Service, Inc.*, 2004 WL 3105679 (Circuit Court of Cook County, IL, Oct. 19, 2004) [Exhibit G].  In *Murray v. GMAC Mortg. Corp.,* 434 F.3d 948 (7th Cir. 2006), the

---

[1]     David Bowes passed away in April 2007.  Clement, p. 12, lines 15-19.  Casey Bowes has since taken over as President and CEO of Defendant.  Bowes, p. 5, lines 22-23.

4

Seventh Circuit reversed the denial of class certification in a case involving statutory claims arising under a different statute.

To achieve class certification, the plaintiff must demonstrate that Rule 23(a)'s four prerequisites are satisfied: (1) that the proposed class is so numerous that joinder of all members is impracticable; (2) that there are questions of law or fact common to the class; (3) that the claims of the representative party are typical of the claims of the class; and (4) that the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). To proceed with a class under Rule 23(b)(3), the plaintiff must show that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

**A.    Proposed Class Definition.**

Plaintiff proposes the following class definition:

> All persons who, on or about October 2005, were sent faxes in the form attached as Exhibit A advertising Finish Thompson's goods or services.

This class definition is appropriate because the class members can be ascertained by reference to objective criteria.[2] *See Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 397 (N.D. Ill. 1987). It is proper to define a class by referencing the defendant's conduct. *See Williams-Ellis v. Mario Tricoci Hair Salons and Day Spas*, No. 05 C 5030, 2008 WL 294731 at *3 (N.D. Ill. Jan. 31, 2008) (Kocoras, J.). *See also, Med1 Online,* 2008 WL 2224892, *2.

Here, there is no need to include language indicating that the advertisement was unsolicited because Defendant never sought permission from any recipient before faxing

---

[2]    See Exhibit A to Plaintiff's Class Action Complaint.

5

advertisements.[3]  Defendant's fax advertised its goods and Defendant never attempted to obtain consent to send any of them.  Everyone who was sent one of Defendant's advertisements is and should be a class member.  The TCPA makes sending an unsolicited fax a violation.  47 U.S.C. § 227(b)(1)(C).[4]  It makes perfect sense to require senders of junk faxes to obtain and possess proof of permission; and to bear the burden of proving that defense.  Otherwise, recipients would have to prove a negative.[5]  Certifying the class will enable the parties to resolve this controversy about Defendant's faxes on a class-wide basis.

**B.     Numerosity.**

A class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Here, the proposed class numbers 13,000.  Therefore, "numerosity" is satisfied. *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002) ("Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient….").

**C.     Commonality.**

Rule 23(a) also requires "questions of law or fact common to the class."  Fed. R. Civ. P.

---

[3] Clement, p. 24, lines 22-25; p. 25 lines 1-22; Bowes, p. 8, lines 11-13; Abraham, p. 28, lines 11-25; p. 41, lines 8-11; p. 84, lines 20-25; p. 85, lines 2-5, lines 6-17.

[4] The clear language of the TCPA makes it a violation to "send" an advertisement without having first obtained express invitation or permission. 47 U.S.C. § 227(b)(1)(C).  Furthermore, the FCC has explained that fax advertisers have the obligation to demonstrate compliance with the TCPA, including showing that they obtained prior express invitation or permission. *In re: Rules and Regulations Implementing The Telephone Consumer Protection Act of 1991*, 21 F.C.C.R. 3787, 3812 (April 6, 2006).  The House Report on the TCPA discusses the phrase "prior express invitation or permission" and "makes clear that advertisers have a duty to 'establish specific procedures for obtaining prior permission <u>and maintaining appropriate documentation with respect to such permission</u>.'" *Jemiola v. XYZ Corp.*, 802 N.E.2d 745, 749 (Ohio Com. Pl. 2003) *citing* U.S. House Rep. 102-317, at 13.

[5] It is well established that the party that seeks the benefit of an exception bears the burden of proving the facts that entitle them to that exception.  "When a proviso . . . carves an exception out of the body of a statute or contract those who set up such exception must prove it." *Javierre v. Central Altagracia*, 217 U. S. 502, 508 (1910); *see also FTC v. Morton Salt Co.*, 334 U. S. 37, 44–45 (1948) ("[T]he burden of proving justification or exemption under a special exception to the prohibitions of a statute generally rests on one who claims its benefits . . .").

23(a)(2). Commonality is satisfied by showing "a common nucleus of operative fact." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). The requirement is usually met in cases where "the defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters." *Id*. A TCPA class satisfied the "commonality" requirement in another case within this district because the defendant "engage[d] in a standardized course of conduct vis-à-vis the class members, and plaintiffs' alleged injury arises out of that conduct." *Hinman*, 545 F. Supp. 2d at 806-07. Moreover, "the possibility that some of the individuals on [the fax transmission] list may separately have consented to the transmissions at issue is an insufficient basis for denying certification." *Id*.

Here, Defendant engaged in standardized conduct involving a common nucleus of operative facts by faxing form ads to lists provided by a third party. The case involves common fact questions about Defendant's fax campaign and common legal questions under the TCPA, such as:

1. Whether Defendant violated the TCPA by faxing advertisements without first obtaining express invitation or permission to do so;

2. Whether Plaintiff and the other class members are entitled to statutory damages; and

3. Whether Defendant's acts were "willful" or "knowing" under the TCPA and, if so, whether Plaintiff and the other class members are entitled to trebled damages.

**D.    Typicality.**

Rule 23(a)'s third requirement is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La*

7

*Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). *See also Sadowski*, 2008 WL 2224892, *4 ("[T]ypicality 'should be determined with reference to defendant's actions, not with respect to particularized defenses it might have against certain class members.'" *quoting Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996) ... Plaintiff's claims and the other proposed class members' claims all arise from Defendant's October 2006 fax campaign. Thus, all class member claims' arise from the same transaction or occurrence (*i.e.* they all received the same faxes as a result of the same advertising campaign). Therefore, we find that this requirement has been met.").

The same is true in this case. Typicality is inherent in the class definition. Each of the class members was subjected to the same conduct. Each member's claim is based on the same legal theory as Plaintiff's.

**E.     Adequacy of Representation.**

    **1.     Rule 23(a)(4) Adequacy Requirement.**

Rule 23(a)'s final requirement is that the class representative must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The burden of showing sufficient interest is relatively modest." *Redmon v. Uncle Julio's of Illinois, Inc.*, No. 07 2350, 2008 WL 656075 at *4 (N.D. Ill. March 7, 2008). "Adequacy" is met when the representative's interests are not antagonistic to or in conflict with those of the other class members. *Uhl v. Thoroughbred Tech. and Telecom., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002). Courts look for two things: (1) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (2) the plaintiff must not have interests antagonistic to those of the other class members. "As long as the plaintiff has some basic knowledge of the lawsuit and is capable of making intelligent decisions based upon his lawyer's advice, there is no reason that he may not

delegate further factual and legal investigation to his attorneys." *Nielsen v. Dickerson*, No. 98-5909, 1999 WL 350649, *7 (N.D. Ill. May 20, 1999) (Kocoras, J.).

Plaintiff and the other class members seek statutory damages under the TCPA.  Given the identity of claims between Plaintiff and the class members, there is no potential for conflicting interests.  There is no antagonism between the interests of Plaintiff and those of the other class members.  Plaintiff understands its obligations and the nature of the claims, is involved in the litigation, and is interested in representing the class and enforcing the TCPA.  Plaintiff has answered written discovery.

### 2. Rule 23(g) Class Counsel Adequacy Requirement.

Class counsel's adequacy is determined by four factors:  (i) the work counsel has done in identifying or investigating potential claims; (ii) counsel's experience in handling class actions; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A).

Here, Plaintiff's counsel are experienced lawyers and they are adequate counsel for the class.  Exhibits H and I.  They have been appointed as lead or co-lead counsel in many contested class actions and have recovered substantial monies for their clients and the class members.  Further, Plaintiff's counsel have been successfully litigating TCPA claims since 2003.  They have prosecuted dozens of such cases to successful resolution.  In *Hinman v. M & M Rentals*, *supra*, *G.M. Sign, Inc. v. Franklin Bank, supra*.  Plaintiff's counsel successfully argued for certification of a TCPA class and then successfully opposed the defendant's petition for interlocutory appeal of the class certification order.  *Hinman* was the first contested TCPA class within the Northern District.

Plaintiff's counsel have successfully litigated insurance coverage actions against TCPA

9

defendants' insurers. In *Valley Forge Ins. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352 (2006), Plaintiff's counsel successfully argued for insurance coverage of TCPA claims. In *American Home v. McLeod*, 475 F. Supp. 2d 766 (N.D. Ill. 2007) (Kennelly, J.), Plaintiff's counsel successfully argued for insurance coverage of the class's claims against McLeod, the certified class pending before Judge McGann (above). In *Eclipse Manufacturing Co. v. United States Compliance, Co.*, 381 Ill. App. 3d 127 (2d Dist. 2007), Plaintiff's counsel successfully argued for indemnification of a class-wide settlement from the TCPA defendant's insurance policies.

Further, Plaintiff's counsel have successfully negotiated class-wide settlements in TCPA cases. *E.g.*, *CE Design, Ltd. v. Exterior Systems, Inc.*, 07 C 66 (N.D. Ill.) (Darrah, J.) (each class member who did not opt out received approximately $106); *CE Design, Ltd. v. North American Industries, Inc.*, 04 L 562 (Lake County, IL) (Mullen, J.) (each class member who did not opt out received approximately $295); *Regent Ins. Co. v. Agility Computer Networking Services, LLC*, 03 CH 13467 (Cook County, IL) (Palmer, J.) (each class member who submitted a claim form received $500); *CE Design, Ltd. v. Lynam Contracting Corp.*, 05 LK 77 (Kane County, IL) (Brown, J.) (each class member who submitted a claim form received approximately $250).

Finally, Plaintiff's counsel will continue to commit adequate resources (staffing and monetary) to ensure that the class is properly represented.

**F.     Predominance.**

Rule 23(b)(3) requires that common questions of law or fact predominate over individual questions. As discussed above, common legal issues predominate because the class members' claims arise under the same federal statute. Common fact issues predominate because the class members' claims are focused on Defendant's fax advertising campaign, which included (1) preparing standardized, form advertisements about its solvent products and (2) hiring a single

third-party to fax those ads to a list of businesses. The *Hinman* court found predominance because the fax broadcasts at issue were sent *en masse* to recipients on a list of "leads" obtained from a third party. *Hinman*, 2008 WL 927910 at *4. The *Sadowski* court found predominance even though the court might "eventually have to investigate whether each claimant had an established business relationship with the Defendant." *Sadowski*, 2008 WL 2224892 at *4-5.

Defendant might argue that the Court must conduct individual investigations to determine who is an appropriate class member. That assertion would be incorrect because the record shows there are no individual issues about consent. Defendant could not have obtained "prior express invitation or permission," because Defendant did not even know in advance to whom its fax advertisements would be sent. Clement, p. 24, lines 22-25; p. 25 lines 1-22; Abraham, p. 28, lines 11-25; p. 41, lines 8-11; p. 84, lines 20-25; p. 85, lines 2-5, lines 6-17.

Defendant might hypothesize that BBS might have obtained prior permission, but nothing in the record supports this.[6] Defendant bears the burden of proving prior express invitation or permission, but has never offered any evidence on that point. *E.g., Rules and Regulations*, 21 F.C.C.R. at 3812; *Sadowski,* 2008 WL 2224892, *4 ("Defendant ultimately has the burden of proof regarding this [prior permission or established business relationship] defense ….").

**G.   Superiority.**

Rule 23(b)(3) also requires that a class action must be the superior method for adjudicating the claims. A certified class is the "superior" way when the "'class action would achieve economies of time, effort, and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other

---

[6]   Hypothetical individual issues do not support denying class certification. *See Ploog v. Homeside Lending, Inc.*, No. 00 C 6391, 2001 WL 1155288 (N.D. Ill. Sept. 28, 2001)(Guzman, J.); and *Carbajal v. Capital One, F.S.B.*, N219 F.R.D. 437, 443 (N.D. Ill. Jan. 20,

undesirable results.'" *Amchem Prods. v. Windsor,* 521 U.S. 591, 615 (1997) (quoting Adv. Comm. Notes, 28 U.S.C. App., at 697); *Scholes v. Stone, McGuire & Benjamin,* 143 F.R.D. 181, 183 (N.D. Ill. 1992) (Alesia, J.) ("Equally important, judicial economy and efficiency, as well as consistent judgments, are achieved by certifying the class."). *Hinman* held that "resolution of the [TCPA] issues on a classwide basis, rather than in thousands of individual lawsuits would be an efficient use of both judicial and party resources." 2008 WL 927910 at *4; *see also Sadowski*, 2008 WL 2224892 at *5 ("class treatment appears to be the superior method of handling Plaintiff's [TCPA] claims.").

"Rule 23(b)(3) was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006). In *Murray*, the Appellate Court reversed the denial of class certification "because the district judge sought to curtail the aggregate damages for violations he deemed trivial." *Id.* The court held, "[I]t is not appropriate to use procedural devices to undermine laws of which a judge disapproves." *Id. Murray* arose from alleged violations of the Fair Credit Reporting Act, which like the TCPA, provides statutory damages. The court explained that the statute "must be enforced rather than subverted." *Id*.

From the perspective of the court system and the class members, a class action is superior to individual actions because the maximum recovery for each class member is only $500 and the TCPA does not provide for fee shifting.

Further, Defendant aimed its junk faxes at businesses and they can only appear in court by hiring a lawyer. *Rowland v. California Men's Colony, Unit II Men's Advisory*, 506 U.S. 194,

---

2004)(Kennelly, J)("[H]ypothetical possibility of multiple individual actions would effectively sound the death knell to use of the class action in consumer law context").

195 (1993)("the law permits corporations … and other artificial entities … to appear in federal courts only through licensed counsel").  Allowing this class to proceed as a class action would be an efficient use of judicial resources and it would be superior to individual lawsuits.

## CONCLUSION

The proposed class meets the requirements of Rules 23(a), (b)(3) and (g).  Plaintiff requests that the Court certify the class, appoint Plaintiff as the class representative, and appoint Plaintiff's attorneys as class counsel.

September 22, 2008.                                         Respectfully submitted,


                                                            /s  Phillip A. Bock
                                                            One of Plaintiff's attorneys


| | |
|---|---|
| Brian J. Wanca | Phillip A. Bock |
| Ryan M. Kelly | Robert M. Hatch |
| ANDERSON + WANCA | BOCK & HATCH, LLC |
| 3701 Algonquin Road, Suite 760 | 134 N. La Salle St., Suite 1000 |
| Rolling Meadows, IL  60008 | Chicago, IL  60602 |
| Telephone:  847/368-1500 | Telephone:  312/658-5500 |

**CERTIFICATE OF SERVICE**

      The undersigned attorney hereby certifies that, on September 22, 2008, he caused a copy of the foregoing Plaintiff's Motion For Class Certification to be served upon all counsel of record using the ECF system.

/s  Phillip A. Bock