IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| G.M. SIGN, INC., an Illinois corporation, Individually and as the representative of A class of similarly situated persons,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>FINISH THOMPSON, INC.,<br><br>　　　　　Defendant. | Case No. 07 C 5953<br><br>Judge Virginia Kendall |

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
AMENDED MOTION FOR CLASS CERTIFICATION**

NOW COMES Defendant, Finish Thompson, Inc. ("FTI"), by its attorneys Stephen J. Schlegel, Stephen J. Schlegel Ltd., and hereby submits its Response in Opposition to Plaintiff's Amended Motion for Class Certification.

**Introduction**

This Court should not certify the class of persons identified by Plaintiff because Plaintiff fails to satisfy several general requirements for class certification set forth in Rule 23. The proposed class members cannot be identified. No party to this action knows to whom how many faxes may have been sent. Numerosity requirements have not been met. Notice to potential class members is impossible. Plaintiff has also failed to satisfy the requirement of proposing a workable class definition.

**Statement of Facts**

In late 2005, FTI agreed to pay $288 to Maxileads (a/k/a Business to Business Solutions and/or Macaw) for its fax advertising service. FTI contracted with Maxileads to have 13,000

1

advertisements sent via fax. Maxileads assured former FTI President, David Bowes, that the fax advertising had been legal since July 1, 2005.

Maxileads then sent some fax advertisements to an unknown number of unidentified fax numbers. FTI asked Maxileads for a copy of the list of the persons faxed, but Maxileads refused, stating it was one of "their personal lists and that they could not let [FTI] see a copy of the list." Depo. of Karen Clement (Feb. 20, 2008, p. 25, lines 13-22). Macaw purchased those lists from list providers like InfoUSA. Depo. of Caroline Abraham (Sept. 16, 2008, p.84, lines 20-25; p.85, lines 2-5). Maxileads never gave transmission verification reports to FTI. Neither GM Sign nor FTI have any list that shows to whom the faxes may have been sent, nor do they have any knowledge of where such a list might be located. Caroline Abraham, an agent of Maxileads, did not produce any such list or information regarding one. In fact, and at best, only six potential fax recipients have been found. There is no proof that more recipients exist.

## ARGUMENT

1. **Plaintiff Fails to Satisfy the Rule 23(a)(1) Numerosity Requirement that Joinder of All Members is Impracticable**

Federal Rule of Civil Procedure 23(a)(1) requires the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). GM Sign fails to satisfy this requirement. The burden of showing that joinder of class members is impracticable, and therefore that a class action is appropriate, is on the party bringing the action. Massengill v. Board of Ed., Antioch Cmty. High School, 88 F.R.D. 181, 184 (N.D. Ill. 1980). While it is unnecessary for the plaintiff to prove that every member of a class *desires* relief, Vergara v. Hampton, 581 F.2d 1281, 1283-84 (7th Cir. 1978) (emphasis added), mere speculation as to a number of class members is insufficient. Valentino v. Howlett, 529 F.2d 975, 979 (7th Cir. 1976) (class certification denied where the plaintiff alleged it was apparent that the number of members

runs into the thousands, but where those figures were not supported by any official papers and where the numbers represented conjecture of someone in the [defendant's] Chicago office).

Plaintiff must provide some evidence or reasonable estimate of the number of class members. Burke v. Local 710 Pension Fund, 2000 WL 336518, 2 (citing Long v. Thorton Twp. High Sch. Dist., 205, 82 F.R.D. 186, 189 (N.D.Ill.1979)). If a plaintiff is unable to provide exact numbers, a good faith effort is sufficient to establish the number of class members. Nonetheless, plaintiffs' good faith estimate cannot be mere speculation. Burke, (citing Marcial v. Coronet Ins. Co., 880 F.2d 954, 957 (7th Cir.1989)).

The court will not (because it cannot) accept conclusory speculative allegations that there must be other class members. Burke, 2000 WL 336518 at 2,6; Perez v. Pers. Bd. of City of Chi., 690 F.Supp. 670, 672 (N.D. Ill. 1988) (stating "[i]n sum, we will not presume numerosity of class membership or, for that matter, any membership in the class on the mere theoretical possibility that such members exist;" and noting that a determination as to whether joinder is impracticable would have been impossible due to the plaintiff's inability to identify any such class members) (emphasis added). This is precisely the problem in this case.

A proposed class cannot be too imprecise or speculative. Harris v. General Development Corp., 127 F.R.D. 655, 659 (N.D. Ill. 1989) (where the class could not include those who were allegedly deterred from even applying for employment). Recently, it was held in this District that, "the plaintiff must show that the proposed class is sufficiently definite, i.e., *that its members are identifiable.*" Saf-T-Gard Intl. v. Wagoner Equities, Inc., 2008 WL 2651309, 3 (N.D. Ill. 2008) (emphasis added). The court pointed out the need for information to identify the recipients of the fax, noting the difference between its facts, and those of Hinman v. M and M Rental Center, 545 F.Supp.2d 802 (N.D. Ill., 2008) (a case on which plaintiff relies heavily in its Motion

3

for Class Certification) stating, "the factual landscape of the instant case differs from the one before the Hinman court in one important respect: *the availability of information sufficient to identify the recipients of the disputed fax.*" Id. at 6 (emphasis added). In Hinman, a list was available. In Saf-T-Gard, there was no list of phone/fax numbers and class certification was denied. Saf-T-Gard, 2008 WL2651309 at 4. Plaintiff also heavily relies on Sadowski v. Med1 Online, LLC, 2008 WL 2224892 (N.D. Ill. 2008). While there were no lists available in that case, it nonetheless differs from this one in that not only were over 380,000 faxes allegedly sent, but the defendant only argued the location of the recipients was not necessarily Illinois. Id. This situation is unlike Sadowski because there is no proof that the faxes were actually sent, much less received.

Here, plaintiff has not shown that a sufficient number of potential class members can be determined at all. In fact, like Saf-T-Gard, plaintiff has no way of showing that the number of members is numerous because no list of fax numbers (or recipients) is available. The Saf-T-Gard court required the plaintiff to show that the class was sufficiently definite, more precisely, that potential class members are identifiable. The parties have identified only six potential recipients of the allegedly offensive fax. Despite this, it simply hangs its hat on the fact that FTI paid Business to Business Solutions to send faxes to claim a class should be certified. There is no proof that Business to Business Solutions completed its promise to send, and no proof of receipt of a fax from any more than six potential recipients.

As in Massengill, supra, GM Sign is attempting to include all those who could *possibly* have received the fax. Here, that could be anyone, in any state or even country in the world. (In Massengill, it was all students who could be subject to discipline, which seemingly meant *all* students). However, not all students were subject to discipline. Likewise, in this case, there is

no proof that all of the faxes were sent. There is proof that only perhaps six were actually received. No evidence has been received from the contractor that it performed the contract. No list of the numbers to which faxes were allegedly sent has been provided to the defendant or found by either party to this suit, despite diligent efforts at discovery and investigation.

GM Sign claims that unlike Borowski, its class is not speculative. However, GM Sign must first show that 13,000 faxes or at least a number sufficient to satisfy the practicality requirement of Rule 23(a)(1), were transmitted. Furthermore, this case follows the mold of both Burke and Perez, where the plaintiffs were unable to sufficiently identify numerous potential class members. The court here would need to presume the faxes were sent, and then presume that a fax machine received each fax (and thus a plaintiff/potential class member), which both Burke and Perez did not allow.

Burke and Perez do not allow conclusory allegations that the numerosity requirement is fulfilled, yet GM Sign simply has concluded that numerosity is satisfied because it proposes the class should include 12,999 others.

For the foregoing reasons, plaintiff has failed to show that the proposed class is so numerous as to make joinder of all members impracticable in accordance with Rule 23(a)(1).

2. **Plaintiff's Class Definition is Unworkable**

Courts have noted two elements in determining if a class definition is "unworkable." First, class certification is inappropriate when the proposed class definition improperly includes a component of lack of defense, namely proof of express permission or invitation prior to the receipt of the fax advertisement. GM Sign, Inc. v. Franklin Bank *SSB*, 2007 WL 4365359, 3 (N.D. Ill. 2007). Second, the definition of the proposed class is also unworkable if the definition contains two components that would be outside the knowledge of potential class members,

5

making it impossible for them to ascertain their membership within the class. Those two components are: (1) that the person was actually sent the allegedly unlawful fax message, and (2) that the defendant cannot provide evidence of that person's permission or invitation for the fax to be sent. Id. A potential class member would only know whether he or she received the fax, and he or she would have no way to determine what evidence the defendant could bring with regard to permission or invitation. Id.

On June 26, 2008, the Seventh Circuit denied class certification on the basis of a similarly unworkable class definition. In that opinion, Judge Easterbrook included an extensive list of potential problems with proposed class definitions. The list included: "Classes [that] grow or shrink with the plaintiffs' contentions as the case progresses;" undefined terms in the definition; the court's inability to know who is in the class and who is not; and, "[if] the plaintiffs prevail, framing relief is apt to require person-specific decisions ... that would be more appropriate to individual actions." Rahman v. Chertoff, 2008 WL 2521669, 3 (7th Cir. 2008).

Additionally, Judge Easterbrook stated two additional factors with regard to such vague and indefinite class definitions. First, he disapproved of the fact that class membership would be hard to "pin down." Id. Second, "[t]he Court held [previously] that the certified class must correspond to the injuries *received* by the representative plaintiffs." (emphasis added) Id. at 4. See also General Telephone Co. v. Falcon, 457 U.S. 147 (1982).

In GM Sign, Inc. v. Franklin Bank SSB, similar proposed class definitions had been rejected three times. The third involved GM Sign correcting its previous mistakes regarding class definition from its first two attempts. GM Sign, Inc. v. Franklin Bank SSB, 2008 WL 2410427, 2 (N.D. Ill. 2008). However it failed to include one final piece of a prima facie TCPA case where it removed and did not replace language regarding an absence of the defense, which

further should have included a reference to the lack of permission or consent so required by a TCPA suit. Id.

Here, the proposed class definition reads, "All persons who, on or about October 2005, were sent faxes in the form attached as Exhibit A advertising Finish Thompson's goods or services."

This proposed definition is nearly identical to that in GM Sign v. Franklin Bank III. The two are similar in that each lacks any reference to the lack of permission or consent. See Id. at 1. Parties who allegedly received the fax that have given permission or consent would not be proper class members, yet they are included in this definition.

Like Rahman, the Court here is unable to ascertain who is in the class and who is not, because no facts in the record show that more than six faxes may have been received. Further, while the class definition includes those who potentially gave permission, the court has no way to determine who those non-members are based on that definition. Judge Easterbrook's two concerns regarding vague and indefinite class definitions ought to be considered here as well. First, the class here is difficult (actually impossible) to "pin down", so much so that only six such potential members have been identified after more than eight months of discovery and an additional extension of one month. See Rahman, 2008 WL 2521669 at 3. Second, Judge Easterbrook noted that the class must correspond to the injuries received by the representative. Id. at 4. Where no one received a fax, no injury could have occurred. Therefore, no injury could correspond to that of the representative.

Plaintiff is incorrect in stating, "there is no need to include language indicating that the advertisement was unsolicited because Defendant never sought permission… before faxing advertisements." Pltf.'s Mem. Supp. Class Cert. 5-6. Because Maxileads indicates that its lists

7

come from commercially available lists, an inquiry as to whether list members have purposefully joined such lists is in fact necessary. For all of the above reasons the class definition is both unworkable and improper.

### 3. Plaintiff Fails to Satisfy Rule 23(a)(2) Typicality and Commonality Requirements

The commonality and typicality requirements of Rule 23(a) are often interrelated. Hyderi v. Wash. Mut. Bank, FA, 235 F.R.D. 390, 396 (N.D. Ill. 2006). However, "while the typicality and commonality standards are similar, satisfying the commonality requirement does not guarantee that a party has satisfied the typicality requirement." Gesell v. Commonwealth Edison Co., 216 F.R.D. 616, 624 (C.D. Ill. 2003).

"A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." Rosario v. Livaditis, 963 F.2d 1013, 1017-18 (7th Cir. 1992). A plaintiff can satisfy the typicality requirement "if the named plaintiff who proves his own claim would also prove the claim of the entire class." Sprague v. Gen. Motors Corp., 133 F.3d 388, 399 (6th Cir. 1998) (Stating, "as goes the claim of the named plaintiff, so goes the claims of the class.")

Northern District Courts have found that the consent issue under TCPA claims precludes a finding that the putative class meets the commonality and/or typicality requirements of Rule 23(a). Saf-T-Gard, 2008 WL 2651309 at 4 (citing Kenro, Inc. v. Fax Daily, Inc., 962 F.Supp. 1162 (S.D. Ind. 1997) (Noting that it would be required to "conduct individual inquiries with regard to each potential class member in order to determine whether each potential class member had invited or given permission for transmission of the challenged fax advertisements."); Forman v. Data Transfer, Inc., 164 F.R.D. 400 (E.D. Pa. 1995) (Stating that "the essential question of fact

8

that each potential plaintiff must prove is whether a specific transmission to its machine was without express invitation or permission on its part.")).

In Oshana v. Coca-Cola Co., 472 F.3d 506 (7th Cir. 2006), cert denied, 127 S. Ct. 2952 (2007) "[plaintiff's] ICFA claim [was] subject to certain specific factual defenses that undermine typicality." Likewise, courts have denied class certification where an individualized inquiry into the facts and circumstances of each recipient's invitation and permission cannot be avoided as well as where there is a need for an individualized determination of applicability of an established business relationship. See Blitz v. Xpress Image, Inc., 2006 WL 2425573 at 1 (N.C. Super. 2006).

GM Sign asserts, "Plaintiff's claims and the other proposed class members' claims all arise from Defendant's October 2006 [sic] fax campaign. Thus, all class member claims' arise from the same transaction or occurrence (*i.e.* they all received the same faxes as a result of the same advertising campaign)." Pltf.'s Mem. Supp. Class Cert. 8. (emphasis added). However, GM Sign's class definition is inconsistent with this statement regarding typicality, in that it includes all persons who were sent the faxes. Id. at 5. Further, GM Sign has failed to include even an assertion that 13,000 faxes were received.

GM Sign argues that both typicality and commonality are satisfied in this case. However, its first "common" question -- whether Defendant violated the TCPA by faxing advertisements without first obtaining express invitation or permission to do so -- requires individual analysis for each alleged class member. This so-called question is not a question at all, rather, it is a defense, to be employed by the defendant at its own directive.

Next, GM Sign argues that a common question is whether the plaintiff and other proposed class members are entitled to statutory damages. This question fails to satisfy the

typicality requirement. The class definition only proposes to include class members who were sent the fax, but class members cannot exist unless they received the fax. Therefore, GM Sign cannot have a claim that is typical to that of a person who never received a fax. GM Sign argues that typicality is inherent in the class definition. In fact, typicality cannot be inherent in the class definition for the aforementioned reasons regarding lack of receipt.

Most importantly, this case is similar to Kenro and to Oshana, both of which required individual inquiries with regard to the claim of each class member.

### 4. Plaintiff Fails to Satisfy Rule 23(b)(3) Predominance and Superiority Requirements

Rule 23(b)(3) requires that questions of law or fact common to members of the proposed class *predominate* over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3); Hyderi, 235 F.R.D. at 398 (emphasis added). Further, the rule provides that the class action must be *superior* to other available methods for resolving the controversy. Id. The advisory committee notes the objective behind these two requirements is to promote economy and efficiency. Fed. R. Civ. P. 23(b)(3) Advisory Committee Notes. It further notes that when common issues predominate, class actions achieve these objectives by minimizing costs and avoiding the confusion that would result from inconsistent outcomes. Id.

However, this requirement is distinct from Rule 23(a)(2)'s commonality element and "far more demanding." Anchem Prods. Inc. v. Windsor, 521 U.S. 591, 623-24 (1997). Additionally, when determining if a plaintiff has met the predominance requirement, district courts may look beyond the pleadings and determine whether the parties' claims are subject to proof by common evidence. Cotton v. Assert Acceptance, LLC., 2008 WL 2561103, 5 (N.D. Ill. 2008) (citing Radamanovich v. Combined Ins. Co. of Am., 216 F.R.D. 424, 435 (N.D. Ill. 2003)).

"In considering Rule 23(b)(3)'s requirements, the court must review the substantive elements of plaintiffs' cause of action, the proof necessary for the various elements and the manageability of trial on these issues." Rodriguez v. Ford Motor Credit Co., 2002 WL 655679, 4 (N.D. Ill. 2002). Class certification cannot be granted when questions involving individual class members predominate over common questions of law and fact. Roman v. First Franklin Fin. Corp., 2001 WL 322563, 2 (N.D. Ill. 2001). "In order to satisfy the requirement of predominance, the plaintiff must show that common issues not only exist but outweigh the individual questions. The common questions must be central to all claims." Dhamer v. Bristol-Myers Squibb Co., 183 F.R.D. 520, 529 (N.D. Ill 1998) (emphasis added). A court "is obligated to determine whether the existence of individual issues preclude certification, and must take into account the substantive elements of the claims so as to envision the form a trial on the issues would take." Zapka v. Coca-Cola Co., 2000 WL 1644539, 4 (N.D. Ill. 2000).

Most important, "where liability determinations are both individual and fact-intensive, class certification under Rule 23(b)(3) is improper." Rodriguez, 2002 WL 655679 at 5 (citing Roman, 2001 WL 322563 at 2). As Judge Gettleman noted in Saf-T-Gard, some courts have found that the consent issue under TCPA claims precludes a finding that the putative class meets the commonality and/or typicality requirements of Rule 23(a). Saf-T-Gard, 2008 WL 2651309 at 4. If the consent issue precludes commonality and typicality, it must preclude the "more demanding" elements of predominance and superiority. Cf. Anchem, 521 U.S. at 623-24.

GM Sign notes that "[d]efendant might argue that the Court must conduct individual investigations to determine who is an appropriate class member." Plaintiff's Motion for Class Certification at 10. It is correct. Conversely, it is incorrect in stating that the record shows "no individual issues about consent." Id. In fact, at least three presumed recipients of the fax

11

inquired about orders from FTI, and voiced no objection to receipt, therefore giving consent after-the-fact. Clement, p. 70, lines 5-9. Plaintiff's claim that no individual issues about consent exist is therefore unfounded. Plaintiff must prove that class certification is appropriate and by failing to support its burden in this regard, it asks FTI to prove a negative. As noted previously, no case has shifted the burden in this regard. Moreover, plaintiff is incorrect in stating that nothing in the record supports an assertion that Maxileads might have obtained prior permission in lieu of FTI. In fact, a logical assumption can be made from the record that Maxileads (or the company from which it purchased the lists) did obtain prior permission from at least some of those on its list because it assured FTI's president, David Bowes, that the fax advertising was legal. Clement, p. 24, lines 23-25; p. 25, lines 1-7. Such may be slim, hearsay and not believed by the plaintiff, but at this point stands as the only discovered declaration of such fact.

Plaintiff notes that hypothetical individual issues do not support denying class certification, yet it cites a case where class certification was denied on the basis of individual and fact-intensive liability determinations. Ploog v. Homeside Lending, Inc., 2001 WL 1155288, 7 (N.D. Ill. 2001). Nonetheless, the individual issues here are, like in Ploog, not hypothetical.

While the Sadowski court found predominance even though it might "eventually have to investigate whether each claimant had an established business relationship with the Defendant," this situation is different. Sadowski, 2008 WL 2224892 at 4-5. Not only does this analysis require investigation into each claimant's business relationship with the Defendant, it also requires analysis into whether the claimants' gave permission by joining a commercially available list and whether they exist (or whether they received any fax). Defendant need not necessarily have obtained prior express invitation or permission, in fact, any of Maxileads,

Macaw, Business to Business Solutions, or the commercial list maker could have done so, which shows individual issues about consent.

The dominant issues in this case are receipt of the fax (because only six individuals have been identified as receiving the fax) and whether consent and/or prior business relationships are evident. As a result, individual issues, not common class issues predominate, and plaintiff cannot satisfy Rule 23(b)(2).

Furthermore, determining liability for a TCPA claim requires an individual analysis into the facts unique to each recipient. There cannot be liability for receipt of a fax at issue if the recipient either consented or was involved in an established business relationship with the sender. For the above-stated reasons, plaintiff fails to satisfy Rules 23(b)(2) and 23(b)(3) and as a result, class certification is inappropriate.

5. **Since Notice Cannot Be Given To Potential Class Members By Any Practicable Means A Denial Of Class Certification is Mandated**

Individual notice must be given to all members who can be identified through reasonable effort, or class certification cannot go forward. Fed. R. Civ. P. 23(c)(2)(B). Plaintiff here attempts to certify the class under Rule 23(b)(3), however, Rule 23(c)(2)(B) requires the court to direct to class members the "best notice that is practicable under the circumstances" for any class certified under Rule 23(b)(3). Id. This gives rise to what commentators and courts have described as the "problem" of giving due process to an "indeterminate plaintiff."

Since there is a potential divergence of interests, "each member in actions for money damages is entitled as a matter of due process to personal notice and an opportunity to opt out of the class action." Lemon v. Intl. Union of Operating Eng'rs, 216 F.3d 577, 580 (7th Cir. 2000). See also Ortiz v. Fibreboard Corp., 119 S. Ct. 2295, 2314 (1999) (stating that a 23(b)(3) class action must have provisions for notice and the right to opt out). In the instant case, GM Sign

proposes a potential class of 13,000 individuals that were sent the fax advertisements.[1] However, GM Sign has neither identified the 13,000 supposed class members, nor has GM Sign suggested a method of identifying those members. Neither GM Sign nor FTI has knowledge of the identities of the alleged class members.

This case is strikingly similar to Kim v. Sussman, 2004 WL 3135348 (Ill. Cir. 2004). There, the plaintiff identified only six fax recipients, two of whom purchased policies of insurance from the defendant after receiving the advertisement. However, plaintiff's counsel in that case represented that approximately 15,270 faxes were sent based upon the deduction that defendant paid $1,527.04 for the fax broadcast at approximately $.10 per fax. Id. at 1-2. Judge Mason denied class certification, with notice at the forefront, for several reasons.

First, the plaintiff did not take obvious steps to provide a reasonable estimate of the number of class members (such as acquiring information from the fax broadcaster). Id. at 2. Second, the Judge noted Congress' intent in enacting the TCPA. Id. He found that,

> In enacting the TCPA, Congress expressly struck a balance that was designed to be fair both to the recipient and the sender of the facsimile. Congress believed that allowing an individual to file an action in small claims court to redress the nuisance of unsolicited faxes and to recover a minimum of $500 in damages was an adequate incentive to address what is at most, a minor intrusion into an individual's daily life.

Id.

Next, Judge Mason found that certifying the class posed several administrative difficulties relating to notice. Most ironically, the most practical way to notify absent class members of the action would likely be to send out another fax using the same transmission list. Id. at 3. He noted that such a transmission was not an advertisement, and thus would not fall

---

[1] Obviously sending an unauthorized fax may constitute a violation of the TCPA. But, we must keep in mind that only when one receives such a fax does one potentially acquire a civil cause of action. Thus, the proposed class definition is fatally defective in the first instance.

within the TCPA. Id. Finally, the Judge noted that the likelihood anyone would recall receipt of the solicitation and retained a copy was "remote, at best," because the one-page advertisements had been sent well over a year earlier.) Id. As a result, notice was impracticable and impossible to satisfy.

Here, as noted, plaintiff can only identify a handful of fax recipients. Notice would be impracticable because the other alleged fax recipients, if any, are unknown. Without those identities, notice is, practically speaking, impossible. And without notice, Rule 23(c)(2)(B) cannot be satisfied. Without satisfaction of that rule, class certification under Rule 23(b)(3) is entirely improper.

## CONCLUSION

Plaintiff's motion for class certification should be denied. Plaintiff has failed to comply with the requirements of Rules 23(a), 23(b)(3), and 23(g). Sufficient Numerosity has not been shown, Plaintiff's class definition is unworkable. Its proposed class is undefinable, and unidentifiable. As a result, the proposed members cannot be notified under Rule 23(c)(2)(B).

Defendant, Finish Thompson, respectfully requests that this Court deny plaintiff's Amended Motion for Class Certification.

Respectfully Submitted,

By: _____
Stephen J. Schlegel, Attorney for
Finish Thompson, Inc.

Stephen J. Schlegel ARDC# 2486903
Stephen J. Schlegel Ltd.
111 W. Washington St., Suite 1020
Chicago, IL 60602
(312) 346-8385