**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| G.M. SIGN, INC., an Illinois corporation, individually and as the representative of a class of similarly situated persons, | ) | |
| Plaintiff, | ) | Case No. 07 C 5953 |
| v. | ) | |
| FINISH THOMPSON, INC. | ) | Judge Kendall |
| Defendant. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF CLASS CERTIFICATION**

Pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), Plaintiff hereby submits this reply brief in support its Amended Motion for Class Certification (Doc. 35).

## INTRODUCTION

Plaintiff has satisfied the elements of Rule 23. Defendant's arguments to the contrary are based on legal arguments that would require the Court to hold that class certification is not a viable means of resolving claims under the TCPA. Accepting Defendant's legal arguments would essentially ratify Defendant's illegal conduct because there would be no practical remedy for Defendant's *en masse* violations of federal law. The Court should certify the class so the merits of this controversy can be resolved in this single action.

## ARGUMENT

### I. PLAINTIFFS HAVE SATISFIED THE RULE 23(a) ELEMENTS.

#### A. Numerosity Is Satisfied.

Defendant does not deny that it contracted and paid for 13,000 junk faxes to be sent. Instead, Defendant argues that "there is no proof that all of the faxes were sent" and "[n]o evidence has been received from the contractor that it performed the contract." (Doc. 37, pp. 4-

5). Defendant ignores the fact that it removed this case, and opposed Plaintiff's motion for remand, by arguing that it believed 13,000 were sent. In its opposition to remand, Defendant stated, "FTI filed its Notice of Removal for the reasons stated therein upon its belief that 13,000 faxes were sent, one of which is the fax complained of by the Plaintiff in this Cause." (Doc. 21, p. 2). Defendant should not be allowed to argue now that the faxes were not sent. *Forest Electric Co. v. Atlantic Mut. Ins. Co.*, No. 96 C 7980, 1997 WL 538719, *4 (N.D. Ill. Aug. 27, 1997) (Conlon, J.) ("The mend the hold doctrine is … an equitable doctrine used to prevent a party from taking a position in litigation inconsistent with a position earlier asserted in the course of that litigation.") (Exhibit J); *Harbor Ins. Co. v. Continental Bank Corp.*, 922 F.2d 357, 364 (7th Cir. 1990) (discussing the mend-the-hold doctrine).

In any event, Judge Aspen recently certified a TCPA class and rejected arguments similar to those Defendant raises here. *See Sadowski v. Med1 Online, LLC*, No. 07 C 2973, 2008 WL 2224892, *3 (N.D. Ill. May 27, 2008) (*Sadowski* II) (J. Aspen) (Doc. 36, Ex. E). Judge Aspen observed:

> While Defendant does not deny the possibility that at least 380,900 faxes were sent nationwide, it nonetheless claims that Plaintiff's class size amounts to nothing more than speculation because the list of specific fax numbers that received the faxes at issue no longer exists. Thus, it claims that Plaintiff cannot demonstrate that anyone in Illinois other than himself received these faxes, despite 18 months of discovery." [*Id*.]

Judge Aspen ruled that where the evidence showed that "Defendant contracted with Westfax to send at least 380,919 faxes," even though a list was unavailable, numerosity was satisfied because Plaintiff's estimates "amount[ed] to more than mere conclusory allegations." *Id*. "Common sense allows us to infer" that the faxes were sent and that "a good number were received…." *Id*.

Defendant relies on cases with distinctly different facts than those at issue here. For

example, in *Perez v. Personnel Board of the City of Chicago,* 680 F. Supp. 670, 672-73 (N.D. Ill. 1988), the plaintiff failed to produce any evidence that any other person was "denied employment as a Chicago Police officer" due to the same reasons as plaintiff. Here, in contrast, everybody in the class got the same fax at the same time. In *Burke v. Local 710 Pension Fund,* No. 98 C 3723, 2000 WL 336518, *1 (N.D. Ill. Mar. 28, 2000) (Hibbler, J.) (Exhibit K), the plaintiff failed to present "some evidence of established ascertainable numbers…." *Id.* at 2. Here, the plaintiff has relied upon evidence that there are 13,000 class members. In *Massengill v. Board of Education, Antioch Community High School*, 88 F.R.D. 181, 184 (N.D. Ill. 1980), the plaintiff attempted to certify a "class of the high school students subject to the disciplinary rules of the school and a subclass of those punished for truancy." *Id.* The court found no "common issues," because behavioral problems resulting in discipline are "limited only by the varieties of misbehavior their ingenuity can devise." *Id.* Here, all class members were sent the same fax by the same defendant in violation of the TCPA.

Here, Defendant contracted and paid for Maxileads – a professional fax blasting service – to send 13,000 junk faxes. Clement Depo, p. 57, lines 22-25; Abraham Depo., p. 21, lines 15-24. Defendant paid $288 for that fax broadcast. Clement, p. 53, lines 17-19; Abraham Depo., p. 26, lines 24-25; p. 27, line 2; p. 33, lines 21-25; p.36, lines 2-9. The evidence that Defendant sent 13,000 junk faxes is more than a "conclusory allegation."[1] Consequently, numerosity is satisfied.

[1] Maxileads' agent in the United States – BBS – has been served with a subpoena to produce telephone records but has not yet complied and produced documents. Abraham Depo., p. 62, lines 12-25. BBS has been deposed and has agreed to work with counsel for the plaintiff and defendant, however, in an effort to find and produce the records related to this case. Abraham Depo., pp. 71-72, 79-81. Plaintiff continues to attempt to work with BBS in an attempt to retrieve the appropriate documents. Plaintiff may need to have a Rule to Show Cause order issued in New York, because BBS is moving too slowly.

**B. The Proposed Class Definition Is Ascertainable By Objective Criteria.**

Defendant next argues that the proposed class definition is "unworkable" because "it lacks any reference to the lack of permission or consent" by class members. (Doc. 37, p. 7). Defendant also argues that a class member "would have no way to determine what evidence the defendant could bring with regard to permission or invitation." *Id.* at 6.

Judge Aspen rejected this same argument in *Sadowski* stating: "While we acknowledge that a fax must be 'unsolicited' in order to recover under the TCPA, there is no requirement in Rule 23 that Plaintiff's class must be defined in terms of the statute allegedly violated. … To the contrary … defining a class in terms of the elements of a statute would be the 'equivalent to deciding the merits of class members' claims,' and thus impermissible." *Sadowski*, 20008 WL 2224892, *2.

Furthermore, the evidence in this case shows that Defendant did not obtain prior express invitation or permission from any recipient before sending the faxes. As indicated in Plaintiff's opening brief, Defendant never even saw Maxileads' target list.[2] Clement Depo., p. 24, lines 22-25; p. 25 lines 1-22; Abraham Depo., p. 28, lines 11-17; p. 41, lines 8-11; Bowes Depo., p. 8, lines 11-13. Permission to receive Defendant's faxes was never requested or received. Abraham, p. 28, lines 18-25.

Plaintiff believes every target is in the class.[3] The class need not be limited with words like "without consent" because nobody gave consent. Moreover, as indicated below, Defendant

---

2 Maxileads purchased the lists from list providers, such as InfoUSA. Abraham, p. 84, lines 20-25; p. 85, lines 2-5.

3 The classes defined in *Rahman v. Chertoff*, --- F.3d ---, 2008 WL 2521669, *3 (7th Cir. June 26, 2008) (Exhibit L) are substantially different than the class definition here. For example, in *Ramon*, the Seventh Circuit identified at least six (6) distinct problems with the class definitions including the fact that "[t]he classes grow or shrink with the plaintiffs' contentions as the case progresses." In this case, the class does not "grow or shrink" and remains static at 13,000 faxes and is objectively defined.

bears the burden of proving that it obtained prior express invitation or permission to fax its advertisements to the class members, but Defendant has made no effort to do so.

Defendant also argues that because the "lists come from commercially available lists, an inquiry as to whether list members have purposefully joined such lists is in fact necessary." (Doc. 37, pp. 7-8). This is false. The default rule is that an advertising fax is prohibited, not that it is allowed. The TCPA prohibits faxes sent without "prior express" consent. Fax numbers are not supposed to be kept secret. "We do not believe that the intent of the TCPA is to equate mere distribution or publication of a telephone facsimile number with prior express permission or invitation to receive … advertisements." *In the Matter of the Telephone Consumer Protection Act of 1991*, Memo. Opinion and Order, ¶ 37, 10 FCC Rcd. 12391 (Aug. 7, 1995). The FCC has explained:

> [F]ax numbers are published and distributed for a variety of reasons, all of which are usually connected to the fax machine owner's business or other personal and private interests. The record shows that they are not distributed for other companies' advertising purposes. Thus, a company wishing to fax ads to consumers whose numbers are listed in a trade publication or directory must first obtain the express permission of those consumers. [*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 2003 WL 21517853 (July 3, 2003).

Thus, the mere publication of a fax number is not "express invitation or permission" to receive junk faxes. Defendant's speculation about why fax numbers appear in phone books and directories is irrelevant and should be ignored. Every target of Defendant's fax at issue is in the class and the class definition is appropriate.

**C. Plaintiff Has Shown Commonality and Typicality.**

"Typicality 'should be determined with reference to defendant's actions, not with respect to particularized defenses it might have with respect to certain class members." *Sadowski*, 2008 WL 2224892, *4 (*quoting Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996)).

Typicality is satisfied where "Plaintiff's claims and the other proposed class members' claims all arise from Defendant's October 2006 fax campaign." *Sadowski*, 2008 WL 2224892, *4. The same is true in the instant case.

Defendant argues that "Northern District Courts have found that the consent issue under TCPA claims precludes a finding that the putative class meets the commonality and/or typicality requirements of Rule 23(a)." (Doc. 37, p. 8). However, Defendant only cites *Saf-T-Gard International, Inc. v. Wagener Equities, Inc.*, Nos. 07 C 0890, 07 C 891, 2008 WL 2651309 (N.D. Ill. June 3, 2008). The only Northern District cases cited in *Saf-T-Gard* are the older *Sadowski* and *GM Sign v. Franklin Bank* opinions where class certification was denied, but then later granted in both cases. *Sadowski v. Med1 Online, LLC*, No. 07 C 2973, 2008 WL 2224892 (N.D. Ill. May 27, 2008) (Aspen, J.) and *G.M. Sign, Inc. v. Franklin Bank, S.S.B.*, No. 06 C 949, 2008 WL 3889950 (N.D. Ill. Aug. 20, 2008) (Kocoras, J.). In fact, all Northern District courts except *Saf-T-Gard* have certified TCPA claims. *Hinman v. M and M Rental Center, Inc.*, 545 F. Supp. 2d 802 (N.D. Ill. 2008) (Bucklo, J.).

Defendant also cites *Oshana v. Coca-Cola Company*, 472 F.3d 506 (7th Cir. 2007). The putative class in *Oshana* was allegedly deceived by the inclusion of saccharin in fountain Diet Coke. The Appellate Court explained that the class was inappropriate because: "[s]uch a class could include millions who were not deceived … [and] [s]ome people may have bought fountain Diet Coke *because* it contained saccharin, and some people may have bought fountain Diet Coke *even though* it had saccharin." 472 F.3d at 514 (emphasis therein). Here, the *Oshana* case is distinguishable because none of the class members agreed to receive an advertising fax from Defendant. Permission to receive Defendant's faxes was neither requested nor received. Abraham, p. 28, lines 18-25.

Defendant argues that the determination of "whether Defendant violated the TCPA by faxing advertisements without first obtaining express invitation or permission to do so – requires individual analysis for each alleged class member." (Doc. 37, p. 9). Defendant is incorrect. Judge Aspen specifically rejected this same argument in *Sadowski* finding both commonality and typicality. *Sadowski*, 2008 WL 2224892, *3-4. "Plaintiff's proposed class consists of those … who received Defendant's faxes as part of the same October 2006 advertising campaign. Thus, all class member claims' arise from the same transaction or occurrence (*i.e.* they all received the same faxes as a result of the same advertising campaign). Therefore, we find that this requirement has been met." *Id*. at *3.

Defendant admits that the issue of consent ("express invitation or permission") is a "defense to be employed by the defendant at its own directive." (Doc. 37, p. 9). Judge Aspen, the FCC, and several courts have specifically found that a defendant "ultimately has the burden of proof regarding this defense." *Sadowski*, 2008 WL 2224892, *4. In *In re: Rules and Regulations Implementing The Telephone Consumer Protection Act of 1991*, 21 F.C.C.R. 3787 (April 6, 2006), the FCC explained that a fax advertiser bears the burden of proving express invitation or permission:

> We are concerned that permission not provided in writing may result in some senders erroneously claiming they had the recipient's permission to send facsimile advertisements. Commenters that discussed this issue agree that a sender should have the obligation to demonstrate that it complied with the rules, including that it had the recipient's prior express invitation or permission. [Citation omitted] Senders who choose to obtain permission orally are expected to take reasonable steps to ensure that such permission can be verified. In the event a complaint is filed, the burden of proof rests on the sender to demonstrate that permission was given. [Citation omitted] We strongly suggest that senders take steps to promptly document that they received such permission. [*Id*. at 3812.]

Requiring fax advertisers to possess proof of permission and to bear the burden of proving that defense are good rules. Otherwise, junk fax recipients would be forced to try to prove a

negative; that they did not give permission.

In *Lampkin v. GGH, Inc.* 146 P.3d 847, 852, 854-55 (Okla. App. Ct. 2006), rehearing denied (Sep 26, 2006), the Oklahoma Appellate Court explained as follows:

> We find that the issues involving permission and/or a prior business relationship do not defeat "commonality" of the class members claims against defendant. … Furthermore, we find that Defendants should bear the burden of showing that there are circumstances that remove their actions from the reach of the TCPA. If the Defendants want to assert that they either received prior permission from an individual to send the fax or that there was a prior established business relationship in defense to an individual's claim that he or she received an unsolicited fax, they should bear the burden of proving the existence of the permission or relationship. The recipients should not be charged with proving that they did not give permission or that they did not have a relationship with Defendants. [*Id*. at 852, 854-55.]

The Court should find that Plaintiff has demonstrated commonality and typicality.[4]

**D. Plaintiff Has Shown Predominance and Superiority.**

In *Sadowski*, Judge Aspen found both predominance and superiority. 2008 WL 2224892, *4-5 ("class treatment appears to be superior method of handling Plaintiff's claims."). The *Hinman* court also found predominance because the fax broadcasts at issue were sent *en masse* to recipients on a list of "leads" obtained from a third party. *Hinman*, 2008 WL 927910 at *4.[5]

---

[4] Defendant also argues that the class definition is improper because "[t]he class definition only proposes to include class members who were sent the fax, but class members cannot exist unless they received the fax." (Doc. 37, p. 10). The TCPA makes sending an unsolicited fax a violation. 47 U.S.C. § 227(b)(1)(C) (emphasis added). In any event, the evidence (including Defendant's own belief) only indicates that all 13,000 faxes were received.

[5] Some courts have done what Defendant now requests, but many others have not and have applied the TCPA as written. *Kavu, Inc. v. Omnipak Corp.*, No. 06 C 109, 2007 WL 201093 (W.D. Wash. Jan. 23, 2007) (certifying class); *Kaufman v. ACS Systems, Inc.*, 110 Cal.App.4th 886 (Cal. App. Ct. 2003); *ESI Ergonomic Solutions, LLC, v. United Artists Theatre Circuit, Inc.*, 50 P.3d 844 (Ariz. Ct. App. 2002); *Hooters of Augusta, Inc. v. Nicholson*, 537 S.E.2d 468 (Ga. Ct. App. 2001). *See also Travel 100 Group, Inc. v. Empire Cooler Service, Inc.*, 2004 WL 3105679, *3 (Circuit Court of Cook County, IL, Oct. 19, 2004) (attached to opening brief at Exhibit I). The *Travel 100 Group* court concluded that *Forman* and other court decisions holding that fax transmissions require individualized inquiry "belie a misunderstanding of telephone facsimile advertising as alleged in the complaint." *Id.* The court explained that *Forman* and its

Defendant adopts the same arguments it used contesting commonality and typicality to contest predominance and superiority (*i.e.*, that "individual investigations" are necessary). (Doc. 37, pp. 10-13). Defendant has not produced any evidence, however, showing that it received any prior express invitation or permission from anyone. Indeed, Defendant admits that it never even reviewed the list of targeted fax numbers. Clement, p. 25, lines 5-12. When Defendant allegedly requested to see the fax listing, Maxileads employee Ron Hillard allegedly denied the request stating that "it was their personal lists and that they could not let [Defendant] see a copy of the list." Clement, p. 25, lines 13-22; Bowes, p. 8, lines 11-13. Without knowing who was on the list, Defendant obviously never sought or received consent from anybody.

Nevertheless, Defendant argues that "at least three recipients of the fax inquired about orders from FTI, and voiced no objection to receipt, therefore giving consent after-the-fact." (Doc. 37, pp. 11-12). This is a red herring.[6] Defendant misses the point of the TCPA law prohibiting junk faxes. Just because someone responds to an illegal junk fax advertisement, does not make the fax legal "after-the-fact." The TCPA requires "prior express invitation or permission" before sending an advertisement to a fax machine. 47 U.S.C. § 227(a)(4).

Defendant also states that "a logical assumption can be made from the record that Maxileads (or the company from which it purchased the lists) did obtain prior permission from at least some" of the 13,000 class members. (Doc. 37, p. 12). Such an assumption would be

---

progeny "seem to resolve the matter based on a belief that this form of messaging is occasional or sporadic and not an organized program. To the contrary, the facts before this Court yield that this Defendant engaged a third party to send more than 3,000 facsimiles to targeted businesses." *Id.* Other courts have improperly refused to certify TCPA claims as a matter of law, and should not be followed. *Kim v. Sussman*, No. 03 CH 7663, 2004 WL 3135348 (Ill. Cir. Ct. Oct. 19, 2004).

[6] Arguing against class certification, predominance and superiority, Defendant argues an additional red herring; that Maxileads allegedly told "FTI's president, David Bowes, that the fax advertising was legal." (Doc. 37, p. 12). Just because a defendant acts naively, or does not understand the law, or claims to have been instructed improperly, is no defense because the TCPA is a strict liability statute.

absurd, not "logical." The blast faxing company could hardly afford to maintain its profitability by contacting even a few much less 13,000 people, on behalf of each client, for $288 total. And it would be literally impossible for a list provider to obtain permission on behalf of each of the tens or hundreds of customers sending faxes. Finally, such a "logical assumption" is nothing more than hypothetical speculation and conjecture as no evidence in the record supports it.

The Court should reject Defendant's arguments against predominance and superiority for the same reasons it should reject Defendant's commonality and typicality arguments.

**E. Notice by Publication is the "Best Practicable" Here.**

Defendant argues that "individual notice must be given" but plaintiff "has neither identified the 13,000 supposed class members, nor has GM Sign suggested a method of identifying those members. Neither GM Sign nor FTI has knowledge of the identities of the alleged class members." (Doc. 37, pp. 13-14). Further, Defendant states that "[n]otice would be impracticable because the other alleged fax recipients, if any, are unknown." *Id.* at 15.

Defendant misunderstands the law of class member notice. It's a common fact that in many different types of class actions, including the instant case to date, the last known addresses of the class members cannot be reasonably identified in order to send them mailed notice.[7] Rule 23 expressly acknowledges that individual notice is not always possible. Fed. R. Civ. P. 23(c)(2)(B)("[T]he court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."). Further, according to the Supreme Court, "This court has not hesitated to approve of resort to publication as a customary substitute in another class of cases where it is not

---

[7] Similarly, under Illinois law, it is not necessary to identify the specific individuals who are possibly members of the class. *See Hayna v. Arby's Inc.*, 99 Ill. App. 3d 700, 710-11 (1st Dist. 1981) (certified class of roast beef sandwich purchasers); *Gordon v. Boden*, 224 Ill. App. 3d 195, 204 (1st Dist. 1991) (certified class of adulterated orange juice purchasers).

reasonably possible or practicable to give more adequate warning." *Mullane v. Central Bank & Trust Co.*, 339 U.S. 306, 317 (1950).

Numerous courts have held that publication notice is proper under these circumstances. *See, e.g.*, *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 786 (7th Cir. 2004) (publication notice only given to 1.4 million members of an "information sharing class" where defendant "has no record of those customers whose financial information it gave the telemarketers but who did not buy anything from the latter. (Those who did buy, the members of the telemarketing class, received individual notice.) Maybe Fleet should have such a record, but it doesn't and so individual notice is impossible."). The *Mirfasihi* court explained:

> When individual notice is infeasible, notice by publication in a newspaper of national circulation (here *USA Weekend*, a magazine that is included in hundreds of Sunday newspapers) is an acceptable substitute. [citations omitted]. Something is better than nothing. But in this age of electronic communications, newspaper notice alone is not always an adequate alternative to individual notice. [citation omitted]. The World Wide Web is an increasingly important method of communication, and, of particular pertinence here, an increasingly important substitute for newspapers. [*Mirfasihi*, 356 F.3d at 786.]

*See also Carlough v. Amchem Products, Inc.*, 158 F.R.D. 314, 328 (E.D. Pa. 1993)(notice by mail not required where proposed method of determining the list of class members "would, after burdensome and expensive efforts, produce at best a list of names and outdated addresses . . ."); *Macarz v. Transworld Systems, Inc.*, 201 F.R.D. 54, 60 (D.Conn. 2001) (Since "notice by mail would have been both over-inclusive and under-inclusive" the court ruled that publication notice was warranted); *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534, 542-45 (N.D. Ga. 1992) (same); *Skelton v. General Motors Corp.*, 1987 WL 6281, *3, n. 3 (N.D. Ill. Feb. 5, 1987) (Nordberg, J.) (Exhibit M) (rejecting mailing to over-inclusive list). Professor Newberg opines that "While the language of the rule itself makes notice mandatory in a Rule 23(b)(3) damages suit, the nature and extent of how that mandate is to carried out are not predetermined by the

rule. … What amounts to reasonable efforts is for the court to determine in each circumstance." 3 NEWBERG ON CLASS ACTIONS § 8:2 (4th ed.).

As more fully explained in the MANUAL FOR COMPLEX LITIGATION (4th), § 21.311, pp. 287-88, 291-92:

> Those who cannot be readily identified must be given the 'best notice practicable under the circumstances.'" … "Publication … may be necessary if individual class members are not identifiable after reasonable effort … For example, if no records were kept of an allegedly defective product from retailers to consumers, publication notice may be necessary. … Determination of whether a given notification is reasonable under the circumstances of the case is discretionary. … Similar problems may arise in consumer class actions on behalf of individual purchasers of goods or services. Sales records might be lost, incomplete, or unreliable, making identification and notification of individual class members difficult. A program to publish notice is especially useful in such cases. … If individual names or addresses cannot be obtained through reasonable efforts, the court must, with counsel's assistance. Determine how to provide the best notice practicable under the circumstances.

Under the circumstances presented here, publication notice is the best practicable.

At any rate, as long as the requirements for class certification are met, this class notification issue is best left for another day as it can always be revisited if necessary. *Sadowski*, 2008 WL 2224892, *5 n. 3 ("We note that while Plaintiff has satisfied the requirements for class certification, if practical issues arise later in the course of the litigation, such as how to ensure proper notice to class claimants if no information regarding their identities is recovered after further discovery, we reserve the right to revisit whether the class action is the superior method for the particular case.").

## CONCLUSION

The proposed class meets the requirements of Rules 23(a) and (b)(3). Consequently, Plaintiff requests that the Court certify the class, appoint Plaintiff as the class representative, and appoint Plaintiff's attorneys as class counsel.

October 14, 2008.

Respectfully submitted,

/s Phillip A. Bock
One of Plaintiff's attorneys

Brian J. Wanca
Ryan M. Kelly
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
Telephone: 847/368-1500

Phillip A. Bock
James M. Smith
BOCK & HATCH, LLC
134 N. La Salle St., Suite 1000
Chicago, IL 60602
Telephone: 312/658-5500