IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| G.M. SIGN, INC., an Illinois Corporation, individually and as the representative of a class of similarly situated persons, | Case No. 07 C 5953 |
| Plaintiff, | Judge Virginia M. Kendall |
| v. | |
| FINISH THOMPSON, INC., | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff G.M. Sign, Inc. ("GM Sign") filed suit against Defendant Finish Thompson, Inc. ("Finish") under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. The TCPA prohibits the use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine. 47 U.S.C.A. § 227 (b)(1)(C). GM Sign alleges that Finish hired a fax broadcaster to send out its advertisements via fax. GM Sign filed a motion and then a first amended motion to certify a class pursuant to Fed.R.Civ.P. 23(b)(3) and this Court denied the motion without prejudice finding that GM Sign had no realistic means of identifying potential class members because it had no record of the intended fax recipients. (Dkt. 42.) GM Sign then filed a Second Amended Motion for Class Certification, this time submitting backup fax logs it argues can be used to identify potential class members. In addition, it filed a Motion for Leave to Disclose a Rule 26(A)(2) expert, Doctor Robert Biggerstaff ("Biggerstaff"), who provided a report supporting GM Sign's Second Amended Motion for Class Certification. For the reasons stated below, both Motions are granted.

## BACKGROUND

Finish contracted with Maxileads, a company that creates advertisements and then distributes them via mass faxes or "blast faxes." Maxileads sent over 13,000 faxes of a Finish advertisement for a system that recycles solvent for ten cents per gallon in exchange for $288 in fees. Finish did not supply fax numbers to Maxileads but rather Maxileads compiled a list of numbers to which it sent the advertisement from anonymous third-party lists. Finish never reviewed the list of fax numbers and neither Maxileads nor Finish requested or received permission to send the faxes from the recipients.

GM Sign asserts that Maxileads sent 13,626 fax transmissions of the Finish advertisement on October 6-7, 2005 and that 10,859 of those transmissions were successful. It bases this information on a back-up disk it received from Maxileads employee Joel Abraham on January 8, 2009 containing what Biggerstaff found to be fax transmission logs. Specifically, the disks contain archived transmission log files titled Fax-1-Solvent1, Fax1-Solvent2, Fax2-Solvent1 and Fax2-Solvent2, one of which contains the Finish advertisement and each of which contain a list of fax numbers and information as to whether the fax was successful.

## MOTION FOR LEAVE TO DISCLOSE RULE 26(A)(2) EXPERT

As an initial matter, GM Sign moves for leave to disclose a Rule 26(A)(2) expert, Biggerstaff, who has submitted a report in support of its Second Amended Motion for Class Certification. On January 8, 2009, GM Sign received a back-up disk allegedly containing fax numbers to which Maxileads sent Finish's advertisement from Joel Abraham, an employee of Maxileads. In response, it hired Biggerstaff to review the disk and report as to its contents. GM Sign represents and this Court accepts that it had no need to hire an expert before it received the

back-up disk. In addition, as this Court found in its order granting Finish's motion to file a third-party complaint, despite the parties' diligence, Caroline and Joel Abraham and their fax-blasting companies were very difficult to locate, thus accounting for the delay in finding the back-up disk. As such, GM Sign's Motion for Leave to Disclose is granted, and this Court will consider Biggerstaff's report in reviewing the Second Amended Motion for Class Certification.

## STANDARD OF REVIEW

The decision to certify a class action rests within the discretion of the district court. *See Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 471 (7th Cir. 1997). "[T]he party seeking class certification assumes the burden of demonstrating that certification is appropriate." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). A party may pursue its claim on behalf of a class only if it can establish that the four threshold requirements of Federal Rule of Civil Procedure 23 are met: "(1) the class is so numerous that joinder of all members is impracticable [numerosity]; (2) there are questions of law or fact common to the class [commonality]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality]; and (4) the representative parties will fairly and adequately protect the interests of the class [adequacy]." Fed.R.Civ.P. 23(a). If the party meets this initial burden, it must also show that the requirements for one of the subsections of Rule 23(b) are met. *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). Here, GM Sign seeks to certify a class under Rule 23(b)(3), which permits a class to seek money damages. Therefore GM Sign must show that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members [predominance], and that a class action is superior to other available methods for fair and efficient adjudication of the controversy [superiority]." Fed.R.Civ.P. 23(b)(3). In

3

addition to the Rule 23 requirements, the party seeking class certification must provide a workable class definition by showing that the members of the class are identifiable. *See Oshana*, 472 F.3d at 513.

## DISCUSSION

GM Sign claims that it received Finish's advertisement unsolicited via fax in violation of the TCPA. The TCPA prohibits the use of "any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless . . . the unsolicited advertisement is from a sender with an established business relationship with the recipient" or "the sender obtained the number of the telephone facsimile machine through . . . the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement, or a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution." 47 U.S.C. § 227(b)(1)(C). It provides for $500 of statutory damages for each violation. 47 U.S.C. § 227(b)(3)(B). GM Sign proposes a class comprised of "All persons who, on or about October 6-7, 2005, were sent faxes in the form attached as Exhibit 1 [a Finish Thompson advertisement] on behalf of defendant Finish Thompson promoting its goods and services for sale."

### Applicable Law

Finish argues that this Court has jurisdiction based on diversity of citizenship and that therefore Illinois choice of law provisions apply and that those provisions counsel that New York state law applies to this case. As such, it argues, this Court cannot certify a class because New York Civil Practice Law Rule 901(b) precludes certification of a class for recovery of statutory damages unless the statute at issue specifically authorizes class action recovery. *See* McKinney's CPLR §

4

901(b) ("unless a statute creating or imposing a penalty, or a minimum measure of recovery specifically authorizes the recovery thereof in a class action, an action to recover a penalty, or minimum measure of recovery created or imposed by statute cannot be maintained as a class action").

First, this Court has jurisdiction over this action not only because the parties are diverse but also because GM Sign's TCPA claim arises under federal law. *See Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 451 (7th Cir. 2005) (removal of TCPA case authorized under § 1441 because the claim arises under federal law). Regardless of the bases for this Court's jurisdiction, federal procedural rules govern cases once they are removed to federal court. *See Alonzi v. Budget Const. Co.*, 55 F.3d 331, 333 (7th Cir. 1995) ("once a case is removed from state to federal court, federal procedure governs") *citing* Fed.R.Civ.P. 81(c) ("[the Federal Rules of Civil Procedure] apply to a civil action after it is removed from a state court"). Thus, the Federal Rules of Civil Procedure apply and this Court decides GM Sign's motion under Federal Rule of Civil Procedure 23, which governs class certification, rather than New York Civil Practice Rule 901.

## **Rule 23(a) Requirements**

### *Numerosity*

Numerosity requires that a class be so large that joinder of all members is impracticable. Fed.R.Civ.P. 23(a)(1). A class of forty is generally sufficient to satisfy this requirement. *See Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n. 9 (7th Cir. 1969). Finish argues that GM Sign fails to meet this requirement because the evidence it presents in order to substantiate its claim that 13,626 faxes were sent and 10,859 were successfully delivered is insufficient.

In its previous decision this Court denied class certification because GM Sign provided literally no evidence regarding the recipients of the fax and therefore the number and identity of class members could not be identified. GM Sign filed evidence of the membership of the class with its Second Amended Motion for Class Certification. Specifically, GM Sign submitted fax logs from a backup disk it received from Joel Abraham purportedly showing the fax numbers to which Maxileads sent the Finish advertisement. The logs also note where the faxes failed. In addition, they submit the report of Biggerstaff, who reviewed the fax directories on the backup disk. In his report, Biggerstaff concluded that the two directories that GM Sign argues provides a basis for their class are consistent with backup archives created by HylaFAX software, a program used in fax broadcasting. Biggerstaff also found that the archives contained the word "solvent" in their title and one that contained the Finish advertisement at issue. The contents of these archives, according to Biggerstaff, include 10,859 error-free faxes involving a total of 10,840 unique fax numbers.

Finish argues that the list of numbers reviewed by Biggerstaff is not sufficient identification of individuals or entities that have a claim under the TCPA. It argues that the list lacks foundation and that it identifies only numbers - not actual entities. Plaintiffs are not required to specify the exact number of persons in the class in order to establish numerosity. *See Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989) *citing Vergara v. Hampton*, 581 F.2d 1281, 1284 (7th Cir. 1978). They may not, however, rely solely on conclusory allegations as to the size of the class. *See Id*. *citing Valentino v. Howlett*, 528 F.2d 975, 978 (7th Cir. 1976). Here, GM Sign does not rely on pure speculation but rather submits fax backup logs that have been examined by an expert. Although these fax logs may not provide the exact number of class members, they are sufficient to establish that thousands of individuals received the fax and thus to establish numerosity. *See*

6

*Hinman v. M & M Rental Ctr.*, 545 F.Supp.2d 802, 806 (N.D.Ill. 2008) (sufficient that plaintiffs submitted evidence that thousands of faxes were sent on defendant's behalf); *G.M. Sign v. Franklin Bank*, No. 06 C 949, 2008 WL 3889950, at * 3 (N.D.Ill. August 20, 2008) (fax transmission logs sufficient to establish numerosity) *compare Saf-T-Gard Int'l, Inc. v. Wagener Equities, Inc.*, 251 F.R.D. 312, 315 (N.D.Ill. 2008) (no certification where no list of numbers from which to identify a set of class members).

Similarly GM Sign need not establish the exact identity of the class members. *See Hinman*, 545 F.Supp.2d at 806 ("plaintiffs are not required to allege the exact number or identity of class members"); *Franklin Bank*, 2008 WL 3889950 at * 3 ("though the [fax] logs do not definitively establish the identities of the recipients without further investigation on the part of class counsel, they provide enough information to enable counsel to locate them"). Although GM Sign submits only fax numbers, not the names and addresses of actual entities that received the faxes, numerosity remains satisfied. GM Sign may use the log and fax numbers to "work backwards" to locate and identify the exact entities to whom the fax was sent.

### *Commonality*

Next, this Court must determine whether all class members share a common question of law or fact. *See* Fed.R.Civ.P. 23(a)(2). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). Such common nuclei are generally present where "defendants have engaged in standardized conduct towards members of the proposed class." *Id. citing Chandler v. SW Jeep-Eagle, Inc.*, 162 F.R.D. 302, 308 (N.D.Ill. 1995). Here, Finish allegedly engaged in a standardized course of conduct toward the plaintiff class. They paid Maxileads to fax advertisements without seeking prior permission to

a large anonymous list of numbers that they did not review. As such, the class members claims all arise from the same factual circumstances and under the same statute and involve common legal issues such as those suggested by GM Sign: 1) whether Defendant violated the TCPA by faxing advertisements without first obtaining express invitation or permission to do so; 2) whether Plaintiff and other class members are entitled to statutory damages; and 3) whether Defendants acts were "willful" or "knowing" under the TCPA and, if so, whether Plaintiff and other class members are entitled to trebled damages. *See Hinman*, 545 F.Supp.2d at 806-07 (finding commonality in TCPA case); *Franklin Bank*, 2008 WL 3889950 at * 3 (same); *see also Keele*, 149 F.3d at 594 (mailing allegedly illegal form letters is standardized conduct).

Finish argues that commonality cannot be met with regard to TCPA claims because of the issue of consent. Specifically, they argue that because no TCPA violation occurred if a fax was sent to an individual who consented to receive it, the Court will have to engage in an individualized inquiry as to whether each class member consented to receive the fax. Factual variations amongst class members' claims, however, do not necessarily defeat class certification as long as the representatives claims are based on the same course of conduct and legal theory as the class as a whole. *See De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). Notably here the faxes were sent to anonymous third party fax lists procured by Maxileads which Finish did not review. In addition, Maxileads never sought nor received permission to send the faxes from the recipients on the list. Finish cannot defeat class certification by asserting the vague possibility that some of the individuals on the anonymous lists may have perchance consented to receiving the fax. *See Hinman*, 545 F.Supp.2d at 807 ("the possibility that some of the individuals on the list may separately have consented to the transmissions at issue is an insufficient basis for denying

8

certification"); *Saf-T-Guard*, 251 F.R.D. at 315 (mass faxing "reflects precisely the type of 'organized program' that lends itself to a common adjudication of the consent issue"). As such, commonality is satisfied. *CE Design v. Beaty Const., Inc.*, No. 07 C 3340, 2009 WL 192481, at *5 (N.D.Ill. January 26, 2009) (finding commonality under the TCPA); *Sadowski v. Med1 Online, LLC*, No. 07 C 2973, 2008 WL 2224892 at *3 (N.D.Ill. May 27, 2008) (same).

### *Typicality*

The typicality inquiry is closely related to the commonality inquiry. *See Keele*, 149 F.3d at 595. "A named plaintiff's claim is typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'" *De la Fuente*, 713 F.2d at 232. As is true in the commonality analysis, "factual differences may be excused as long as the named representative's claims are based on the same course of conduct as the class as a whole and the same legal theory." *Id*.

As discussed above with reference to commonality, GM Sign's claim arises from the same course of conduct as those of the other class members - Finish's October 2006 "fax-blast" advertisement. It also relies on the same legal theory, that is, that Finish and Maxileads sent the faxes unsolicited in violation of the TCPA. Finish again argues that GM Sign cannot establish typicality because the many of the fax recipients may have consented to receive the fax. Typicality, however, "should be determined with reference to [the defendant's] actions, not with respect to particularized defenses it might have against certain class members." *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996); *see also Sadowski*, 2008 WL 2224892, at *3 ("the fact that Defendant may be able to argue later that it has an established business relationship with some class members does not prevent a finding of typicality at this stage of proceedings"). Here Finish's

9

actions were the same toward GM Sign and all other class members and typicality is satisfied. *See*, *e.g.*, *CE Design*, 2009 WL 192481, at *5 (typicality met in TCPA claim because same conduct led to the claims and all claims were based upon the same legal theory); *see also Keele*, 149 F.3d at 595 (typicality met where defendants send form letters seeking a collection fee to all class plaintiffs).

### *Adequacy of Representation*

The last requirement of Rule 23(a) is that the named plaintiffs fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a)(4). This adequacy requirement has two components: (1) the plaintiff's attorney must be qualified, experienced and generally able to conduct the litigation; and (2) the class representative must not have claims antagonistic to or conflicting with those of other class members. *Rosario v. Livaditis*, 963, F.2d 1013, 1018 (7th Cir. 1992).

Finish agrees that GM Sign's counsel is qualified to represent the class. It argues that GM Sign may have interests antagonistic to the class by virtue of the fact that they did not sue the actual broadcaster of the faxes at issue and have opposed Finish's motion to file a third party complaint against the broadcaster. This issue is moot, however, because this Court granted Finish's motion to file a third party complaint in its order dated March 18, 2009. (Dkt. 59.) Finish does not argue that GM Sign exhibits any other interest antagonistic to those of the class nor does this Court see any such interest. As such, the adequacy requirement is met. GM Sign meets all the requirements of FRCP 23(a) and therefore this Court moves forward to address the applicable requirements under FRCP 23(b).

### **Rule 23(b)(3) Requirements**

GM Sign seeks to certify a class under Federal Rule of Civil Procedure 23(b)(3). Therefore in addition to the requirements under Rule 23(a) it must show "that the questions of law or fact

10

common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3); *see also Payton v. County of Kane*, 308 F.3d 673, 680 (7th Cir. 2002) (plaintiff must satisfy at least one of the categories under Rule 23(b)).

The predominance requirement is similar to the commonality requirement although more demanding. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). It tests whether a proposed class is "sufficiently cohesive" to warrant adjudication as a class. *See Id*. Here, again, identical faxes were sent *en masse* to persons whose numbers were pulled from anonymous lists. All the claims "fall within the purview of the same federal statute and arise from the alleged conduct of one defendant acting over a very short period of time." *CE Design*, 2009 WL 192481, at *9. As such, common issues such as how the list was generated and whether Finish's actions violated the TCPA predominate. *See*, *e.g.*, *Id*. (predominance satisfied under similar circumstances); *Hinman*, 545 F.Supp.2d at 807 (same); *Sadowski*, 2008 WL 2224892 (same).

Finish's argument here is similar to its argument against commonality. That is, it argues that the dominant issue is whether individuals consented to receive the fax - and individual issue to be decided separately for each class member. There is no evidence in the record at this point, however, to indicate that individual issues of consent will subsume common issues. Indeed, the argument that consent issues will arise remains hypothetical. The evidence in the record shows only that the fax was sent to numbers on a third-party list. Finish did not review the list and Maxileads did not seek consent from the persons on the list. As such, predominance is satisfied. *See Sadowski*, 2008 WL 2224892, at *4 ("while eventually we may have to investigate whether each claimant had an established business relationship with the defendant, there is currently no evidence before us that

11

'resolution of individual issues will consume more time or resources than the resolution of common issues'") *quoting Hinman*, 545 F.Supp. at 807.

Under Fed.R.Civ.P. 23(b)(3), GM Sign must also show that a class action is a superior method of adjudicating the claims at issue. *See Burns v. First Am. Bank*, No. 04 C 7682, 2006 WL 3754820, at * 10 (N.D.Ill. December 19, 2006) *citing* Fed.R.Civ.P. 23(b)(3). Here there are a large number of potential class members each with the same claim under the same statute and each potentially entitled to a relatively small recovery. Deciding each claim separately would be an extremely inefficient use of both judicial and party resources and because of the small individual recovery, many Plaintiffs would not even bring their claims. *See Hinman*, 545 F.Supp.2d at 807. This situation makes GM Sign's claims ideal for resolution as a class action. *See Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) ("Rule 23(b)(3) was designed for situations . . . in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate") *citing Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997). As such, this court finds that the resolution of these issues on a class-wide basis is superior to allowing repetitive individual suits. *See*, *e.g.*, *CE Design*, 2009 WL 192481, at * 10 (class action superior in that it aggregates small recoveries); *Hinman*, 545 F.Supp.2d at 807 (resolution of TCPA case as class action superior and "an efficient use of both judicial and party resources"); *Franklin Bank*, 2008 WL 3889950, at * 6 (class action superior in part due to consistency of decision and efficiency). Therefore GM Sign meets the requirements for class certification under Rule 23.

## **Suggested Class Definition**

In addition to requirements of Rule 23, the party seeking class certification must provide a workable class definition by showing that the members of the class are identifiable. *See Oshana*,

472 F.3d at 513. Although the Seventh Circuit has not addressed the issue in the TCPA context, courts within this district agree that reference to objective criteria and reference to the defendant's conduct can provide the basis for identifying members of the class. *See Saf-T-Gard*, 251 F.R.D. at 315 (N.D. Ill. 2008); *Hinman*, 545 F.Supp.2d at 805-06 (N.D. Ill. 2008); *see also Burns*, 2006 WL 3754820, at *3 ("a sufficient class definition is 'precise, objective and presently ascertainable'") *citing Rozema v. Marshfield Clinic*, 174 F.R.D. 425, 431 (W.D.Wis. 1997).

GM Sign proposes the following class definition: "All persons who, on or about October 6-7, 2005, were sent faxes in the form attached as Exhibit 1 [the Finish advertisement] on behalf of defendant Finish Thompson promoting its goods or services for sale." In its previous decision, this Court found that because GM Sign did not submit any evidence as to the intended fax recipients, class certification was inappropriate because there was no realistic means of identifying potential class members. As discussed above, GM Sign remedied this discrepancy by submitting backup fax logs. As such, this class is ascertainable - the class members can be identified by referencing the fax logs.

Finish argues that the class definition is still lacking because it does not incorporate a requirement that class members did not consent to receiving the facts. The class definition, however, need not contain any reference to consent. Lack of consent need not be included in the class definition simply because it is incorporated into the statute under which the claim arises. *See Sadowski*, 2008 WL 2224892, at *2 ("there is no requirement in Rule 23 that Plaintiff's class must be defined in terms of the statute allegedly violated") *citing* Fed.R.Civ.P. 23(a), (b). Regardless, there is no evidence in the record that any recipient of the fax consented. Rather, Maxileads simply drew the fax numbers from a third party list. Furthermore, delving into issues of consent in

13

ascertaining class membership, as would be required by inserting a requirement that class plaintiffs did not consent to receive Finish's faxed advertisement, would amount to impermissibly deciding the merits of the case at class certification. *See Id*. ("defining a class in terms of the elements of a statute would be 'equivalent to deciding the merits of class members' claims,' and thus impermissible") *quoting Foreman v. PRA III, LLC*, No. 05 C 3372, 2007 WL 704478, at *6 (N.D.Ill. March 5, 2007); *see also CE Design*, 2009 WL 192481, at * 1 (certifying a class with no reference to consent). That is, a determination of class membership would amount to a determination of the merits of the case. As such, this Court accepts GM Sign's proposed class definition.

### Notice

Lastly GM Sign argues that no practicable means of providing notice to class members exists. The difficulties in notifying class members is relevant to a determination of the manageability of a class action. *See Burns*, 2006 WL 3754820 at *11 *citing Simer v. Rios*, 661 F.2d 655, 677-78 (7th Cir. 1981). Here, however, as discussed above, GM Sign can use the fax numbers on the transmission logs to determine the identity and contact information of its class members and could use this information to provide notice.

For the reasons stated above, GM Sign's Motion for Leave to Disclose a Rule 26(A)(2) Expert and its Second Amended Motion for Class Certification are granted. So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: August 20, 2009